335 P.2d 412

ARIZONA CORPORATION COMMISSION; William T. Brooks, John H. Barry and Mit Sims, as members of said Commission, Appellants,

v.

ARIZONA WATER COMPANY, a corporation, Appellee.

No. 6649.

Supreme Court of Arizona.

Feb. 11, 1959.

Robert Morrison, Atty. Gen., W. T. Willey, Sp. Asst. Atty. Gen., Walter Roche, Phoenix, Tom Fulbright, Florence, Charles W. Stokes, Coolidge, Eugene K. Mangum, Casa Grande, of counsel, for appellants.

Fennemore, Craig, Allen & McClennen, Phoenix, for appellee.

JOHNSON, Justice.

This is an appeal from a judgment of the Maricopa County Superior Court vacating and remanding, under A.R.S. § 40–254, four separate orders of the appellant Arizona Corporation Commission fixing the rate bases and rates of return of the appellee Arizona Water Company for its water utility properties located in and serving the towns of Florence, Coolidge, Casa Grande and Ajo Heights, respectively. Four separate actions were filed and were consolidated for trial, as the issues involved were identical. The trial court found that the Commission failed to determine the fair value of the Company's properties devoted to the public use at the time of the inquiry and that it failed to give the Company a fair return on such properties, thus in effect taking its property without due process of law.

The Arizona Water Company, on April 1, 1955, purchased water utilities properties located in ten Arizona towns for a lump sum price on the entire system. Shortly thereafter the Company petitioned the Commission for a determination, for rate-making purposes, of the fair value of the Company's properties serving the four communities above mentioned as well as for a determination of the needed earnings requirements of the Company based upon such fair values. Hearings were then held before the Commission in each of the four localities.

A test period of the most conveniently recent one-year period was agreed upon, as is the custom in the utilities field. At each hearing the Commission's own staff and

the Company each presented testimony as to the percentage of the entire system which it felt should be allocated to each of the four towns. The Company presented evidence pertaining to the cost of reproduction new, less observed depreciation, for that portion of the utility properties serving each town, as well as evidence of year-end original cost less depreciation, which was the original cost as it stood on the books at the end of the test period, including all additions.

The staff presented evidence of the average original cost less depreciation of the Company's properties, taking the average between the original costs less depreciation at the beginning and at the end of the test period, there having been additions in the meantime. The Commission had in its files its records of its authorization of the Company's purchase of the entire system for $3,600,000 in April, 1955. The price was mentioned during the hearings but no testimony was taken concerning the entire transaction or the seller's reasons for accepting that amount, which was about 55% of the net book value. Mention was made of a prior determination by the Commission in 1951 of the fair value of the then much smaller system; this fair value amount was a good deal in excess of the purchase price later paid by the Company.

The Commission's orders, all dated October 25, 1956, in each instance stated the purchase price of the entire system, the percentage of the system allocated to that particular town and the resulting amount, and found that there had been supplies purchased and improvements made since that time and that a pro rata portion of operating expenses and other factors should be allowed. In each of its four orders the Commission found this total of purchase price plus additions and expenses to be the rate base, and allowed the sum of 5% of the rate base to be earned by the Company. The Company's applications for rehearings were denied.

The appellant Commission assigns as error a conclusion of law of the trial court that

"In the determination of the fair value of the Company's properties devoted to the public use at the time of the inquiry, the Commission must, in each instance, consider the original cost less depreciation of the Company's property devoted to the public use at the end of the test period, together with reproduction cost new less depreciation of the Company's properties at the end of the test period, where such evidence is submitted."

We have stated that a reasonable judgment concerning all relevant factors is required in determining the fair value of the properties at the time of the inquiry. Simms v. Round Valley Light & Power Company, 80 Ariz. 145, 294 P.2d 378. If

the Commission abuses its discretion in considering these factors or if it refuses to consider all the relevant factors, the fair value of the properties cannot have been determined under our Constitution. The weight given to each particular factor is entirely within the discretion of the Commission, so long as that discretion is not abused. The Constitution of Arizona, Article 15, Section 14, A.R.S., states that the Commission "shall, to aid it in the proper discharge of its duties, ascertain the fair value of the property within the State of every public service corporation doing business therein; * * *." No formula is given for determining fair value, and we do not attempt to prescribe one, but the Commission must establish the rate base on the basis of fair value and that alone. Round Valley case, supra.

We do not believe that the trial court was in error in requiring the Commission to consider in this case both the original cost less depreciation and the reproduction cost new less depreciation where evidence on these factors is submitted. These factors are both relevant, particularly where there has been considerable time since the original construction of the utility.

Since fair value is to be determined as of the time of the inquiry, Round Valley case, supra, the trial court was correct in requiring that the original and reproduction costs at the end of the test period, rather than those of some earlier date, or of some average date, be used. There may have been additions to or deletions from the properties of the utility after the beginning of the test period. Average costs, average earnings, average customers, et cetera, over the test period may be necessary in order for the Commission to get a fair earnings picture, as such a test period method avoids seasonal peaks and valleys in a utility's operations. But in finding the fair value rate base the only relevant original cost figure is that computed at the time of the inquiry, or as near as possible thereto. An "average original cost" figure found by averaging the original costs less depreciation as computed at the beginning and at the end of the test period, thus roughly halving any additions or deletions, is simply not the original cost at the time of the inquiry and should not be used as regarding the physical property. The estimates of reproduction cost new less observed depreciation should also be as close to the time of the inquiry as possible.

The appellant Commission assigns as error the trial court's conclusion of law that

"Evidence of 'purchase price' is not a proper factor for consideration by the Commission in its determination of the fair value of the Company's properties devoted to the public use at the time of inquiry."

The Commission contends that a recent purchase price is market value and that

market value would be fair value as a matter of law. We think not. It would be almost impossible for a public utility to have a market value, as the term is commonly used, since such things are not routinely and commonly sold on the public market. But even so, there would be many elements and considerations involved in arriving at the price to be paid for a public utility which could be of no concern in arriving at the fair value. For instance, any price, "market" or otherwise, would necessarily include the sale value of the utility's assurance of a fair rate of return and the fact that it operates as a monopoly. And consider the instant case, wherein testimony at the trial court revealed that the seller of the properties under consideration was willing to take a price less than the book value, because the transaction would give it a tax saving of one and one-half million dollars, a power contract worth a million dollars, as well as hundreds of thousands of dollars in interest.

█ Here, the purchase price happened to be less than the book value of the properties; it could as easily have been a great deal more than the book value. This court has held that under our Constitution the Corporation Commission must find the fair value of the properties devoted to the public use, and that in determining the fair value the Commission cannot be guided by the prudent investment theory nor can it use common equity as the rate base standard. Round Valley case, supra. The amount of capital invested is immaterial. Under the law of fair value a utility is not entitled to a fair return on its investment; it is entitled to a fair return on the fair value of its properties devoted to the public use, no more and no less. It has been stated that under this test it makes no difference whether the utility "bought it, received it as a gift, or won it in a lottery." Peoples Natural Gas Co. v. Pennsylvania Public Utility Comm., 153 Pa.Super. 475, 34 A.2d 375, 381.

█ Therefore, since the purchase price as capital investment cannot be considered, and since the considerations in arriving at a purchase price are not necessarily those elements comprising fair value, we hold that the purchase price of a public utility does not constitute, as a matter of law, its fair value.

However, the Commission must consider all available evidence related to the fair value, and an inquiry into a recent purchase transaction might be of assistance, in the discretion of the Commission. But the *reasons* for that purchase price and not the amount itself would be of first importance in shedding light on the fair value of the property. Certain facts concerning the physical condition of the properties, or what is actually used and useful, or the practical effects of particular business practices might thus be revealed more clearly. A purchase price which was a product of

204

many considerations not relevant to fair value is, as a dollar figure, obviously not in itself necessarily indicative of the fair value of the properties sold. It is of course possible that the fair value might by coincidence be the same amount as that which had been paid in a purchase transaction. But this would be highly unlikely in a situation such as that in the instant case, where there is a great disparity between the purchase price on the one hand and the apparently undisputed and uninflated original cost and reproduction cost figures on the other.

Thus, if the Commission had taken into consideration the entire recent purchase transaction it would not have been an abuse of discretion. But here the Commission considered only that part of the transaction concerning the amount paid to the seller, and in that respect it acted arbitrarily, as all relevant factors were thus not considered in finding the fair value of the properties. The trial court was correct in setting aside and remanding the orders finding the fair values of the properties to be the purchase price plus additions subsequent to purchase and finding the earnings requirements to be the sum of 5% of that amount.

The judgment of the trial court remanding the causes to the Commission for the determination of the fair value of the properties, a fair rate of return to be allowed thereon, and the affixing of just and reasonable rates is hereby affirmed.

PHELPS, C. J., and STRUCKMEYER, UDALL, and BERNSTEIN, JJ., concurring.