**STATE of Missouri ex rel. VALLEY SEW-AGE COMPANY, a Corpora-tion, Appellant,**

**v.**

**PUBLIC SERVICE COMMISSION of the State of Missouri et al., Respondents.**

**No. KCD 26642.**

Missouri Court of Appeals,
Kansas City District.

Oct. 7, 1974.

Motion for Rehearing and/or Transfer
Denied Nov. 4, 1974.

Application to Transfer Denied
Dec. 16, 1974.

Robertson, Ely & Wieland, Louis A. Robertson, St. Louis, for appellant.

Harry Wiggins, Gen. Counsel, Paul W. Phillips and David L. Smith, Asst. Gen. Counsels, Jefferson City, for respondent Missouri Public Service Commission.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

This appeal arises from a utility rate order entered by the Public Service Commission of Missouri, hereinafter referred to as "Commission". The order was precipitated by a new tariff filed on October 2, 1970, by Valley Sewage Company, hereinafter referred to as "Company", requesting authority to increase the rate it charged to residential customers from $2.00 per month, payable quarterly, to $4.00 per month, payable quarterly, and to increase the rate it charged to commercial customers, from $50.00 annually, payable quarterly, to $75.00 annually, payable quarterly. The Commission granted the Company an increase in rates, but not to the extent sought by the Company. The report and order of the Commission, entered June 8, 1971, disapproved the new tariff filed by the Company but did authorize the Company to charge residential customers $3.00 per month, payable quarterly, and to charge commercial customers $75.00 annually, payable quarterly. Further, continuance of a single family connection fee in the amount of $250.00 was authorized.

After the Commission handed down its order, the Company filed an application for rehearing pursuant to Section 386.500, RSMo 1969, V.A.M.S. which was denied by the Commission. Thereupon, the Company filed an application for review in the Circuit Court of Cole County as provided for in Section 386.510, RSMo 1969, V.A.M.S. The Circuit Court of Cole County affirmed the order of the Commission and the Company timely appealed to this court in accordance with Section 386.540, RSMo 1969, V.A.M.S.

The Company, as its full name denotes, provides sanitary sewage disposal service to six hundred thirty-five (six hundred twenty-seven residential and eight commercial) customers in Bentley Manor, St. Bernard Hills, Bentley Farms Subdivision and Dover Mills Subdivision, subdivisions located in St. Louis County, Missouri.

It is impossible to bring the major issues on appeal into proper focus without tracing the evolution of both the Company and the rates authorized by the Commission.

In 1960 the H. W. Freeman Construction Company (hereinafter referred to as "Freeman Construction") was engaged in the acquisition and development of raw land in St. Louis County for subdivision purposes, and the construction and sale of homes thereon. Freeman Construction is a Missouri corporation whose stock is exclusively owned by H. W. Freeman, its president, and his wife. Freeman Construction, in order to facilitate development and the sale of homes, in view of the absence of any sanitary sewage disposal system in the area, initially constructed a sewage lagoon, mechanical treatment plant, collecting sewers, mains and outfall lines (hereinafter collectively referred to as the "original plant").

Overall construction cost of the original plant was $212,142.00. Freeman Construction treated construction cost of the original plant as "an expense in the construction" of the homes it built and sold in the area served by the original plant. Freeman Construction recaptured construction cost of the original plant from persons to whom it sold homes in the area. The referred to purchasers became customers of the original plant. Thus, the purchasers of the home being served by the original plant, in fact, paid for the original plant.

From 1960 to 1963 Freeman Construction furnished sanitary sewage disposal service to residential and commercial customers in its subdivisions by means of the original plant. In doing so, it charged the following rates: $2.00 per month for residential customers, payable quarterly, $50.00 annually for commercial customers, payable quarterly, and $250.00 as a connection fee for single family units.

In 1963 the Company, a Missouri corporation whose stock is also exclusively owned by H. W. Freeman, its president, and his wife, came into being. In 1963 Freeman Construction transferred the original plant to the Company at no cost. The Company continued charging the original rates. Neither Freeman Construction, nor the Company, charged any connection fees to purchasers of homes in subdivisions owned and developed by Freeman Construction.

On June 1, 1967, the Commission acquired jurisdiction over the Company (Laws 1967, p. 578, § 1—presently Sections 386.020 and 386.250, RSMo 1969, V.A.M.S.). Some time subsequent to June 1, 1967, and prior to October 2, 1970, the date the Company filed its new tariff with the Commission, the developer of a subdivision designated Dover Mills Subdivision conveyed "connecting sewers" and "land rights" to the Company at no cost for the right and privilege of having homes built and sold by him in Dover Mills Subdivision served by the Company. In addition, the developer of Dover Mills Subdivision paid the Company $31,250.00 for connection fees for one hundred twenty-five single family units. The "connecting sewers" and "land rights" are integrated into the Company's original plant and treated by the Company and the Commission as part of the original plant.

The mechanical treatment plant comprising part of the original plant was designed to service approximately five hundred customers, with a leeway of approximately twenty-five percent to permit servicing additional customers without enlarging the original mechanical treatment plant. In 1970 the Company invested $71,592.00 in a second treatment plant in anticipation of servicing customers in an additional subdivision that was under development in the Company's certified area.

In setting the new rates authorized to be charged by the Company, the Commission determined the Company's rate base to be $64,104.00. The Commission arrived at this rate base as follows:

| | | |
|---|---|---|
| Value of original plant as of 11/30/70: | $235,329.00 | |
| Value of additional treatment plant as of 11/30/70: | 71,592.00 | |
| TOTAL | | $306,921.00 |
| Less construction cost of original plant, which, in fact, was paid for by the Company's customers: | ($212,142.00) | |
| Less the value of "connecting sewers" and "land rights" acquired from developer of Dover Mills Subdivision at no cost: | (30,675.00) | |
| | | ($242,817.00) |
| RATE BASE: | | $ 64,104.00 |

————◆————

Thus, construction of the original plant, "connecting sewers" and "land rights" were treated as contributions from customers and users of the Company in aid of construction and excluded from the rate base.

The Commission determined the Company's projected yearly total operating revenues to be $41,059.00 on the basis of the newly authorized rates, and its projected yearly total operating expenses to be $31,382.00, leaving a projected yearly net operating income of $9,677.00. The sum of $9,677.00 represents a projected yearly net operating income equal to approximately 15% of the rate base of $64,104.00.

On appeal, the Company challenges the Commission's order on five grounds. The first, second and third grounds embrace a common theme—the Commission went beyond the ambit of its statutory authority by excluding the amount of $242,817.00 as contributions from customers and users of the Company in aid of construction in arriving at $64,104.00 as the applicable rate base.

In advancing the common theme embraced in its first, second and third grounds, the Company relies on subsection 5 of Section 393.270, RSMo 1969, V.A.M.S., which reads as follows:

"5. In determining the price to be charged for sewer service the commission may consider all facts which in its judgment have any bearing upon a proper determination of the question although not set forth in the complaint and not within the allegations contained therein, with due regard, among other things, to a reasonable average return upon the value of the property actually used in the public service and to the necessity of making reservations out of income for surplus and contingencies."

Addressing the matter with even greater specificity, the Company adamantly asserts that the following language contained in subsection 5 of Section 393.270, supra, "with due regard, among other things, to a reasonable average return upon the value of the property actually used in the public service", constitutes a positive mandate that "the value of the property actually used in the public service" must be included in its rate base, regardless of its source, thereby precluding exclusion of contribu-

tions in aid of construction in the amount of $242,817.00 from its rate base. The Company relies on broad, sweeping general principles to support its equally broad and sweeping conclusionary argument. It contends the statutory language, "value of the property actually used in the public service", consists of non-technical words which must be given their plain and ordinary meaning and, when such is done, the referred to language in subsection 5 of Section 393.270, supra, clearly discloses an inflexible legislative mandate which the Commission had no authority to construe otherwise, or to arbitrarily disregard and refuse to follow. No fault can be leveled against the separate authorities cited by the Company insofar as they stand to respectively support the general principles collectively asserted as structuring the conclusionary argument advanced. Fault does lie, however, in the ultimate conclusion asserted by the Company, and the pertinency of the otherwise correctly stated general principles to support it, for a number of reasons emanating from principles equally well entrenched and far more pertinent to the issues at hand.

■ It is patently obvious that this court, in order to subscribe to the conclusions asserted by the Company, would have to foreclose consideration of other salient language in subsection 5, of Section 393.270, supra. For example the following language, "[i]n determining the price to be charged for sewer service the commission may consider all facts which in its judgment have any bearing upon a proper determination of the question", would have to be excluded from consideration. By way of further example, "with due regard, among other things", which immediately precedes "to a reasonable average return upon the value of the property actually used in the public service", would have to be completely read out of the statute in order to make tenable the conclusion asserted by the Company. One may not cull out parts of a statute inconsistent with his view and treat them as mere surplusage.

Castilo v. State Highway Commission of Missouri, 312 Mo. 244, 279 S.W. 673 (Mo. banc 1925). Every part composing the whole of a statute must, if at all possible, be given effect. State v. Sho-Me Power Co-Op, 191 S.W.2d 971 (Mo. banc 1946) and Stewart v. Johnson, 398 S.W.2d 850 (Mo.1966). Stating these principles more forcibly, statutes will not be fragmented for purposes of construction so as to isolate for consideration language favorable to a certain construction, while at the same time excluding language which would compel a different construction if the statute was construed in its full context. Viewing subsection 5 of Section 393.270, supra, in conformity with the principles immediately heretofore enunciated, it is clearly evident that the legislature intended for the Commission to "consider all facts which in its judgment have any bearing upon a proper determination" of a sewage utility's rate base for the purpose of fixing authorized rates to be charged. Likewise, it is clearly evident that the legislature did not intend to limit the Commission's consideration to one factor, "the value of the property actually used in the public service", thereby excluding consideration of all other relevant factors. The following language in subsection 5 of Section 393.270, supra, "with due regard, among other things", immediately preceding as it does "to a reasonable average return upon the value of the property actually used in the public service", fortifies this conclusion.

Subsection 4 of Section 393.270, RSMo 1969, V.A.M.S. which relates solely to the Commission's determination of rates for gas, electric and water utilities, reads as follows:

"4. In determining the price to be charged for gas, electricity, or water the commission may consider all facts which in its judgment have any bearing upon a proper determination of the question although not set forth in the complaint and not within the allegations contained therein, with due regard, among other things, to a reasonable average return

upon capital actually expended and to the necessity of making reservations out of income for surplus and contingencies."

As readily noted, subsection 4 of Section 393.270, supra, is identical to subsection 5 of Section 393.270, supra, in all respects, save two. It applies to (1) gas, electric and water utilities rather than sewage utilities, and (2) it refers to a "reasonable average return upon capital actually expended" rather than "to a reasonable average return upon the value of the property actually used in the public service". However, both of the latter are immediately preceded by the same language in both sections—"with due regard, among other things".

■ The Supreme Court in State ex rel. Missouri Water Company v. Public Service Commission, 308 S.W.2d 704 (Mo.1957), had occasion to construe the language now common to both subsections of Section 393.270, RSMo 1969, V.A.M.S. In addressing "due regard, among other things", the court in State ex rel. Missouri Water Company, at 718, 719, stated:

" 'Due regard' to one factor, 'among other things', simply requires consideration of that factor. *It is not preclusive of other relevant factors. Indeed, the phrase 'among other things' clearly denotes that 'proper determination' of such charges is to be based upon all relevant factors.*" (Emphasis added.)

Transposition of the above construction of "due regard, among other things" to subsection 5 of Section 393.270, supra, which employs identical language, completely thwarts the Company's argument that the Commission exceeded the ambit of its statutory authority by excluding contributions by customers and users of the Company in aid of construction from its rate base. This conclusion is buttressed by Section 393.130(1), RSMo 1969, V.A.M.S., which, inter alia, provides that " . . .

All charges made or demanded by any . . . sewer corporation for . . . sewer or any service rendered or to be rendered shall be just and reasonable . . .". Statutes in pari materia are to be construed together. City of St. Louis v. Carpenter, 341 S.W.2d 786 (Mo.1961), and State ex rel. Schwab v. Riley, 417 S.W.2d 1 (Mo. banc 1967).

■ The argument advanced by the Company, if traced to a logical conclusion, would exclude from the Commission's rate making process any consideration of whether a rate was "just and reasonable" from the standpoint of utility customers. Such an extreme result would defile the basic concept of utility rate regulation. It is axiomatic that a just and reasonable utility rate is a bilateral proposition. Like a coin, it has two sides. On the one side it must be just and reasonable from the standpoint of the utility. On the other side it must be just and reasonable from the standpoint of the utility's customers. This bilateral aspect of utility rate making, although susceptible of easy expression in theory, is considerably more difficult to achieve. For these very reasons, the court in State ex rel. Missouri Water Company v. Public Service Commission, supra, recognized, if not explicitly, certainly implicitly, that rate making bodies, within the ambit of their statutory authority, are vested with considerable discretion to make such pragmatic adjustments in the rate making process as may be indicated by the particular circumstances in order to arrive at a just and reasonable rate. Consistent therewith this court believes that subsection 5 of Section 393.270, supra, evidences a legislative intent to imbue the Commission with authority to properly weigh all relevant factors in the sewer utility rate making process in order to achieve the ultimate goal of bilateral fairness. Thus, the truly significant question in this case is posed. Was the "value of the property actually used in the public service" properly weighed by deducting therefrom contribution by customers and users of the Company in aid of

construction in the amount of $242,817.00? The answer to this query, for several reasons, is yes. To force the customers and users of a utility to pay rates predicated upon the value of a facility which they themselves substantially paid for, as is the case here, is the antithesis of a just and reasonable rate. Conversely, where the customers and users of a utility have substantially paid for the facilities employed in the public service, the antithesis of a just and reasonable rate is one that would permit a utility's stockholders to recover a return on money which they, in. fact, never invested. The conclusion reached by this court, although never heretofore expressly drawn at the appellate level in this state, finds solid support in DuPage Util-. ity Company v. Illinois Commerce Commission, 47 Ill.2d 550, 267 N.E.2d 662 (1971). As previously pointed out, the quintessence of a just and reasonable utility rate is that it be just and reasonable to both the utility and its customers. Therefore, this court holds the Commission properly weighed the value of the property actually used in the public service by the Company, to arrive at a proper rate base, by deducting contributions made by its customers and users in aid of construction, and, for reasons heretofore enunciated, doing so was not proscribed by subsection 5 of Section 393.270, supra.

■ The fourth ground for relief asserted by the Company is, to say the least, innovative. The thrust of the Company's fourth ground appears to be that no contributions in aid of construction were ever made to the Company because it and Freeman Construction, by virtue of common ownership and officers, were "one and the same". The Company then conveniently assumes, without aid or force of logic, and absent factual or legal support, that what the Commission treated as contributions in aid of construction to the Company actually consisted of property acquired from capital expenditures made by Freeman Construction; thus, no contributions, in fact,

were ever made to the Company. The Company's assumption is as false as it is convenient, and can be fairly characterized as a technical argument at best. As heretofore noted, the Company's original plant, in the final analysis, was built from funds that emanated from its customers and users, and not, in reality from funds of Freeman Construction. The Company cites Blackwell Printing Company v. Blackwell-Wielandy Company, 440 S.W.2d 433 (Mo.1969) and Fletcher Cyclopedia Corporations, Permanent Edition, Volume 1, Sec. 43, for the proposition that although common ownership of the stock of two corporations and identity of officers is not sufficient to make one corporation the alter ego of the other, the converse is true if the controlling corporation has "no separate mind, will or existence of its own" and is merely the business "conduit" for the controlling corporation. If for no other reason, the Company's cited authorities are unpersuasive and inapplicable because the original plant, in the final analysis, was built from funds emanating from its customers and users. Moreover, although expressly avoiding any definitive ruling, this court seriously doubts that a publicly regulated utility corporation can be merely the alter ego or business conduit of a business corporation.

Basically, good law is common sense. If it is not common sense, it is not good law. This court holds that the Company's fourth ground falls considerably short of the law's just aspirations. In so holding, this court in no way implies any criticism of counsel for the ingenuity displayed by the argument. It is the ingenious argument of counsel that broadens the horizon of the law. The fact that it fails to convince and persuade in a particular case should never stifle its constant exercise.

■ As a final ground for relief the Company contends the Commission erred in allowing only ten percent of the cost of the additional mechanical treatment plant

to be depreciated in projecting the Company's net operating income for rate making purposes. The Commission did so on the premise that the additional treatment plant was not reasonably necessary or essential to serve the Company's present customers. Although the Commission included the full value of the additional treatment plant in the rate base, it felt constrained to balance the equities by allowing only ten percent of the cost of the additional treatment plant to be depreciated in projecting the net operating income for rate making purposes. The Commission was seized with authority to properly weight the depreciation attendant to the additional treatment plant if the additional treatment plant was not reasonably necessary or essential to serve the Company's present customers. Denver Union Stock Yard Co. v. United States, 304 U.S. 470, 475, 58 S.Ct. 990, 82 L.Ed. 1469 (1938). A careful review of the record discloses that there was substantial evidence from which the Commission could find that the additional treatment plant was not reasonably necessary or essential to serve the Company's present customers. This court's review of the rate order entered by the Commission is constitutionally and statutorily constricted. Article V, Section 22, V.A.M.S, Missouri Constitution, 1945; Section 386.270, RSMo 1969, V.A.M.S.; Section 386.430, RSMo 1969, V.A.M.S.; Section 386.510, RSMo 1969, V.A.M.S.; and Section 386.540, RSMo 1969, V.A.M.S. This court may not disturb a rate order entered by the Commission unless it contravenes the law or is clearly contrary to the overwhelming weight of the evidence. The scope of review of orders entered by the Commission is sharply drawn in State ex rel. Chicago, Rock Island & Pacific Railroad Company v. Public Service Commission, 312 S.W.2d 791 (Mo. banc 1958). Accordingly, the Company's fifth ground for relief must also be denied.

Judgment affirmed.

All concur.