599 P.2d 184

**ARIZONA COMMUNITY ACTION ASSOCIATION and Valle Del Sol, a Non-Profit Arizona Corporation, Appellants,**

v.

**ARIZONA CORPORATION COMMISSION, Bud Tims, Ernest Garfield, and Jim Weeks, Members of the Arizona Corporation Commission, Appellees,**

v.

**ARIZONA PUBLIC SERVICE COMPANY, Intervenor-Appellee.**

No. 14298.

Supreme Court of Arizona,
En Banc.

July 10, 1979.

Rehearing Denied Sept. 6, 1979.

Bruce Meyerson, Phoenix, for appellants.

Murphy & Storey by Robert T. Murphy and James W. Mueller, Phoenix, for Arizona Corp. Commission.

Snell & Wilmer by Jaron B. Norberg, Phoenix, for Arizona Public Service.

HAYS, Justice.

The appellants (plaintiffs below) filed an action in Superior Court contesting the validity of Decision No. 48319 of the Arizona Corporation Commission, issued August 1, 1977. Summary judgment upholding the validity of the decision was granted. Appellants lodged a timely appeal and appellees (defendants below) petitioned for transfer to this court. We took jurisdiction pursuant to Rules of Civil Appellate Procedure, rule 19(A).

In the decision attacked by appellants, the Corporation Commission granted Arizona Public Service (hereinafter APS) an approximate 6% rate increase, designated as the Step I increase. Thereafter, in the years 1978 and 1979, APS was authorized to increase its rates a maximum of 5% each year if certain conditions were met. These increases were designated as Step II and Step III.

The Step II increase and subsequently the Step III increase are triggered by APS's decline in return on common stock equity below 13.75% at year end 1977 and 1978. Under the decision, if the return on common stock falls below 13.75%, APS is entitled to increase rates 5% of gross operating revenue or by a "revenue deficiency," whichever is less. The revenue deficiency is calculated by first totaling (1) the amount of electric properties placed in service since the prior rate increase, (2) construction work in progress for the preceding calendar year for any plant for which construction work in progress had previously been included in rate base, and (3) construction work in progress during the preceding calendar year for plants scheduled to go into service within two years. The sum of these amounts is multiplied by the rate of return

on electric plant authorized by the Commission. Specifically, appellant contests the validity of the Step II increase, which became effective January 1, 1978.

Two issues are presented for our consideration: (1) May the Corporation Commission authorize a rate of return based on plant construction in progress and not yet in service? (2) May the Commission authorize a utility to increase rates based solely on the percentage of return on common stock equity?

 First, we wish to make it clear that construction work in progress (CWIP) but not yet in service *may be included in determining a fair value rate base.* Alluding to an opinion of the attorney general to the effect that CWIP may not be considered in calculating the fair value of a corporation's property, we stated the following in *Arizona Corporation Commission v. Arizona Public Service*, 113 Ariz. 368, 371, 555 P.2d 326, 329 (1976):

> [W]e do find that insofar as it advises the Corporation Commission that the Arizona Constitution and our cases require that the Commission may not consider additional plant under construction at the close of the historic year, *it is not correct.* The Corporation Commission in its discretion can adopt any of the various approaches used by public utility regulative bodies in considering plant under construction as long as the method complies with the constitutional mandate and is not arbitrary and unreasonable. . . .
>
> *A plant under construction is at least a relevant factor which the Commission could consider in determining fair value.* The attorney general's opinion would cut off consideration of any facts subsequent to the historic year. In *Simms v. Round Valley,* [80 Ariz. 145, 294 P.2d 378] *supra,* we said: "Fair value means the value of properties at the time of inquiry [citing cases]," 80 Ariz. at 151, 294 P.2d at 382, and "[t]his is necessary for the reason that the company is entitled to a reasonable return upon the fair value of its properties at the time the rate is fixed [citing cases]." 80 Ariz. at 153, 294 P.2d at 383.

> From the foregoing, *it is obvious that the Commission can consider matters subsequent to the historic year.* . . . Construction projects contracted for and commenced during the historical year may certainly be considered by the Commission upon the cutoff time previously indicated.
>
> [I]t appears to be in the public interest to have stability in the rate structure within the bounds of fairness and equity rather than a constant series of rate hearings. (Emphasis added.)

The Commission stated in the decision under attack that it was relying on *Arizona Corporation Commission v. Arizona Public Service, supra,* and therefore would initiate innovative procedures in an attempt to deal promptly and equitably with increasingly complex regulatory matters. At the Step I hearing, the Commission fulfilled the constitutional requirements of art. 15, §§ 3, 14, which mandate a finding of the fair value of all property at the time of fixing a rate. As to Step II, that specific portion of the decision from which appellant appeals, the Commission provided that funds actually expended on CWIP as of December 31, 1977, for any major electrical project to go on line prior to December 31, 1979, could be included in calculating fair rate base. The order further provides that APS file for a full review of properties, used and useful, operating income and determination of fair value, fair rate of return on fair value, and revenue deficiencies, if any, for a test year ending December 31, 1978, unless APS shall have filed earlier.

 In view of *Arizona Corporation Commission v. Arizona Public Service, supra,* we find entirely reasonable that portion of the Commission's decision allowing the inclusion of construction work in progress to go on line within two years from the effective date of the Step II increase. Nor do we find fault with the Commission's attempt to comply with our indication in *Arizona Corporation Commission v. Arizona Public Service, supra,* that a constant series of extended rate hearings

are not necessary to protect the public interest. The hearing culminating in the order of August 1, 1977, resulted in a determination of fair value. The adjustments ordered by the Commission in adding the CWIP to that determination of fair value were adequate to maintain a reasonable compliance with the constitutional requirements if used only for a limited period of time. Adjustments obviously would be made after a full hearing for a test year ending December 31, 1978, as provided in the contested order.

■■ Our analysis of the second issue, however, compels us to answer it in the negative. Although we see no reason why return on common stock equity may not be taken into account in fixing a rate increase, the troublesome aspect here is that the Commission made that factor the *sole* criterion for triggering an increase. The jurisprudence of our State made it plain long ago that the interests of public-service corporation stockholders must not be permitted to overshadow those of the public served. In *Salt River Valley Canal Co. v. Nelssen*, 10 Ariz. 9, 13, 85 P. 117, 119 (1906), we said:

> In determining what is a reasonable price to be charged for services by a public-service corporation, an examination must be made not only from the point of view of the corporation, but from that of the one served, also. A reasonable rate is not one ascertained *solely from considering the bearing of the facts upon the profits of the corporation. The effect of the rate upon persons to whom services are rendered is as deep a concern in the fixing thereof as is the effect upon the stockholders or bondholders.* A reasonable rate is one which is as fair as possible to all whose interests are involved. (Emphasis added.)

A utility has the right to assure its investors a reasonable return. At the same time, however, this court is aware of the potential danger of tying rates to one factor over which APS exercises total control. APS has the power to issue and to buy and sell stock and thereby influence the return on common stock—without regard for the interests of the consumer. It is this complete divorcement from the interests of the public that disturbs us. We therefore reverse the judgment of the Superior Court and remand the matter to the trial court for further proceedings consistent with the foregoing.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.