688 P.2d 698

**COGENT PUBLIC SERVICE, INC., an Arizona public service corporation, Plaintiff-Appellant,**

**Ross A. Fish and Errol R. Fish, Intervenors-Appellants,**

v.

**ARIZONA CORPORATION COMMISSION, Defendant-Appellee.**

**No. 1 CA–CIV 6895.**

Court of Appeals of Arizona, Division 1, Department B.

May 15, 1984.

Reconsideration Denied July 12, 1984.

Review Denied Sept. 20, 1984.

Fennemore, Craig, von Ammon, Udall & Powers, P.C. by Kent A. Blake, Phoenix, for plaintiff-appellant.

Burch & Cracchiolo, P.A. by Jerry L. Cochran, Phoenix, for intervenors-appellants.

Arizona Corporation Commission, Legal Division by James M. Flenner, Asst. Atty. Gen., Phoenix, for defendant-appellee.

## OPINION

MEYERSON, Presiding Judge.

This appeal arises out of rate proceedings before the Arizona Corporation Commission (Commission). On September 1, 1981, the Commission entered its opinion and order establishing a fair value rate base for plaintiff-appellant Cogent Public Service, Inc. (Cogent), confirming a previously granted interim rate increase and establishing permanent rates for the utility's sewer customers.

Cogent filed a timely motion for rehearing which was denied by operation of law. A.R.S. § 40–253.D. Thereafter, Cogent filed its complaint in Maricopa County Superior Court alleging numerous factual and legal errors made by the Commission. Ross A. Fish, Bernadine W. Fish and Errol R. Fish, major stockholders in Cogent, then filed an unopposed motion to intervene in the superior court proceedings.[1] On November 4, 1982, judgment was entered in favor of the Commission.

Although a number of issues were raised in Cogent's complaint, the trial court concluded that the only issue properly before it concerned the legality of the Commission's deduction of contributions in aid of construction from Cogent's rate base. The trial court determined that this was the only issue raised in Cogent's application for rehearing before the Commission and therefore, pursuant to A.R.S. § 40–253.C., it could only consider that issue. Thus, in

1. The intervenors did not appear in the proceedings before the Commission. The Commission has not challenged their right to participate in the superior court or in this court. *See* A.R.S. § 40–253.B. Although Ross, Bernadine and Er-rol Fish intervened below, the appeal was taken by only Ross and Errol Fish. The intervenors' position in this case is similar to that of Cogent. Reference to Cogent throughout this opinion shall include the intervenors.

this appeal, we must determine whether the trial court properly limited its jurisdiction in accordance with A.R.S. § 40–253.C.; and, if so, whether it correctly ruled that the Commission could lawfully deduct contributions in aid of construction from the utility's rate base. As explained more fully below, we affirm the judgment of the trial court.

## I.  A.R.S. § 40–253.C.

■ Cogent essentially alleges that the Commission (1) incorrectly determined original cost rate base, (2) miscalculated the amount of contributions in aid of construction, (3) erred in computing the reconstruction cost new rate base, (4) erred in computing the fair value rate base, (5) erred in deducting *any* contributions in aid of construction in arriving at rate base, and (6) incorrectly set the utility's rates. The Commission argues in this court, as it did to the superior court, that the trial court lacked jurisdiction to consider all but one of the foregoing issues because the application for rehearing filed by Cogent before the Commission did not raise any issue except (5) above—whether the Commission could lawfully deduct any contributions in aid of construction from rate base.

A.R.S. § 40–253.C. provides as follows:

The application [for rehearing] shall set forth specifically the grounds on which it is based, and no person, nor the state, shall in any court urge or rely on any ground not set forth in the application.

"The purpose of this provision is to afford the Commission the opportunity to correct its own mistakes before the matter is brought to court." *Horizon Moving & Storage Co. v. Williams*, 114 Ariz. 73, 75, 559 P.2d 193, 195 (1976). In *Horizon Moving & Storage Co.*, the application for rehearing simply referred to the transcript in the Commission proceedings and the applicant's memorandum. The court determined that there was only one objection which the applicant raised before the Commission and therefore there was "no actual doubt or uncertainty as to the position" of

the applicant on rehearing. *Id.*, 559 P.2d at 195. Thus, the court concluded that there had been compliance with A.R.S. § 40–253.-C. The requirement of A.R.S. § 40–253.C. "is satisfied if the legal or factual point . . . relied upon was raised in the petition for rehearing." *State v. Arizona Corporation Commission*, 94 Ariz. 107, 112, 382 P.2d 222, 225 (1963).

■ Despite Cogent's protestations to the contrary, the application for rehearing cannot be read in any way other than to conclude that the sole issue raised therein concerned the lawfulness of the Commission's "generic" decision to exclude from rate base any contributions in aid of construction. The application for rehearing argues that the "deduction of the alleged contribution[s] in aid of construction is contrary to the law of Arizona." That argument is presented throughout the four-page document and there is simply no other contention raised.

■ The application does state that the Commission's decision should be reconsidered on the grounds that the Commission "illegally, arbitrarily and capriciously failed to find and relate the rate to the fair market value of the sewer plant and system" owned by Cogent. Cogent argues that this statement is broad enough to include all of the other issues which it subsequently raised in its complaint. Indeed, the statement is broad enough to undoubtedly cover virtually any issue or point that had been raised by Cogent during the entire proceedings. But unlike *Horizon Moving & Storage Co.*, where only one objection was made in the proceedings before the Commission, it appears that Cogent had numerous objections to the Commission's position. Thus, the foregoing statement is so broad that it fails to give the Commission any effective notice of the *specific* grounds on which the application for rehearing is based (with the exception of the one issue mentioned previously).

If the Commission is to have any meaningful opportunity to reconsider its decisions and to correct errors prior to litigation, the application for rehearing must be

of such specificity that the Commission has been put on reasonable notice of the precise grounds upon which the claim of error is predicated. Because we conclude that the only issue sufficiently raised in the application for rehearing concerned the lawfulness of the Commission's exclusion of any contributions in aid of construction from rate base, we affirm the trial court's ruling that its jurisdiction was solely limited to the consideration of this issue.[2]

## II. CONTRIBUTIONS IN AID OF CONSTRUCTION

■ We now consider whether the trial court's ruling affirming the exclusion of contributions in aid of construction from rate base was correct. Contributions in aid of construction are funds provided to a utility by the consumer under the terms of a collection main extension agreement or service connection tariff which are not refundable to the consumer. R14–2–601(9). A typical contribution in aid of construction occurs when an individual who desires service from a utility company is located so far from the company's existing main or line that the company is unwilling to bear the expense of constructing the necessary extension of its facilities.[3] The utility company will agree to render the service if the individuals who desire it will pay all or part of the cost of construction. Title to the newly constructed facility passes to the utility which agrees to use such facility to supply the service to those who have paid for the line or main extension. The new plant is thereafter used and maintained by the company similarly to its other facilities. The amount paid by these customers is entered on the books of the company as a contribution in aid of construction.[4]

The Commission's rules have provided for the exclusion of these amounts from a utility's rate base since 1974.[5] Prior to adoption of its rules and regulations, the Commission's practice was also to exclude contributions in aid of construction from rate base. *Re Tucson Gas, Elec. Light & Power Co.*, 40 P.U.R.3d 453, 456 (Ariz. 1961).

■ Despite the broad discretion given to the Commission in determining what is the fair value of a utility's property, *Simms v. Round Valley Light & Power Co.*, 80 Ariz. 145, 154, 294 P.2d 378, 384 (1956), Cogent contends that the Commission may not lawfully exclude contributions in aid of construction from rate base. In support of its position, Cogent relies almost exclusively upon the decision of the Arizona Supreme Court in *Arizona Corporation Commission v. Arizona Water Co.*, 85 Ariz. 198, 335 P.2d 412 (1959). In that decision, the court stated:

> The amount of capital invested is immaterial. Under the law of fair value a

2. Different counsel filed the application for rehearing on behalf of Cogent.

3. Payments made by utility subscribers to a developer-affiliate of a utility for improvements, such as water and sewer service, subsequently transferred to the utility, have also been considered to be contributions in aid of construction. *DuPage Utility Co. v. Illinois Commerce Commission*, 47 Ill.2d 550, 267 N.E.2d 662, *cert. denied*, 404 U.S. 832, 92 S.Ct. 74, 30 L.Ed.2d 62 (1971).

4. The intervenors argue that in this case no evidence was presented to the Commission "which showed that amounts were paid to Cogent by customers desiring … a plant in an outlying area."

At the time of oral argument, the court advised the parties that our file did not contain the record of the proceedings before the Commission. Several months later, the court was provided with an incomplete record consisting of transcripts of two of four hearings and four of many exhibits. Based upon the sparse record before us, we are simply unable to determine whether items excluded by the Commission were improperly designated as contributions in aid of construction. In any event, the application for rehearing fails to expressly challenge any particular item classified as a contribution in aid of construction or to point out how the excluded items did not fall within the customary definition of contributions in aid of construction. Thus, we must necessarily decide this case based on the common definition of contributions in aid of construction as memorialized in the Commission's rules.

5. Arizona Corporation Commission General Order U–53, adopted April 8, 1974, now, R14–2–103.A(3)(h), –(n).

utility is not entitled to a fair return on its investment; it is entitled to a fair return on the fair value of its properties devoted to the public use, no more and no less. It has been stated that under this test it makes no difference whether the utility 'bought it, received it as a gift, or won it in a lottery.'

*Id.* at 203, 335 P.2d at 415 (quoting *Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission,* 153 Pa.Super. 475, 486, 34 A.2d 375, 381 (1943)). Cogent's argument is simply that if a utility is entitled to a fair return on property obtained as a gift or won in a lottery, it must necessarily be entitled to earn an investment on contributions in aid of construction.

We do not believe that the language from *Arizona Water Co.* relied upon by Cogent requires the legal conclusion that the Commission must include in a utility's rate base sums contributed by customers as a condition for obtaining utility service. The court's discussion in *Arizona Water Co.* clearly leads to the opposite conclusion. In *Arizona Water Co.,* the utility purchased properties for a lump sum price which was approximately 55% of the net book value of the purchased system. The Commission determined that the purchase price constituted the utility's rate base because the price reflected market value and market value would therefore be "fair value" as a matter of law.

The supreme court disagreed noting that it would almost always be impossible for a public utility to have a market value because utilities are not routinely and commonly sold on the public market. The court cited with approval language from a Pennsylvania decision stating that a utility is entitled to a fair return on its investment regardless of whether its property was purchased, received as a gift or won in a lottery. But the court went on to state that the Commission could legitimately inquire into the *"reasons"* for the purchase price and that this would be "of first importance in shedding light on the fair value of the property." 85 Ariz. at 203, 335 P.2d at

415. The court suggested that in determining fair value, the Commission ought to consider the physical condition of the properties, what is actually used and useful, and the practical effects of particular business practices. *Id.,* 335 P.2d at 415. For example, property for which a utility has made an investment of capital may nevertheless be excluded from rate base if it is no longer used and useful in providing utility services to consumers. *See Simms v. Round Valley Light & Power Co.,* 80 Ariz. at 155, 294 P.2d at 382.

■ The court in *Arizona Water Co.* expressly noted that the Commission can take into account the reasons which underlie the purchase price. Therefore, it appears to us where utility plant has been given to a company by its customers as a condition for obtaining utility service, this reason can be taken into account by the Commission in concluding that it would be unfair to the customer to be forced to pay a return to the utility upon an investment which was made by the customer himself.

It has long been the policy of our courts to recognize that the setting of utility rates must take into account the interests of utility consumers as well as utility shareholders. As early as 1906, our supreme court held that the "effect of the rate upon persons to whom [utility] services are rendered is as deep a concern in the fixing thereof as is the effect upon the stockholders or bondholders." *Salt River Valley Canal Co. v. Nelssen,* 10 Ariz. 9, 13, 85 P. 117, 119 (1906). Recognition of consumer interests in the setting of rates was reaffirmed by the supreme court in *Arizona Community Action Ass'n v. Arizona Corporation Commission,* 123 Ariz. 228, 599 P.2d 184 (1979) where the court reversed a Commission decision which allowed a utility to increase its rates solely upon consideration of changes in the rate of return to the utility's common stockholders. The court stated that the "jurisprudence of our State made it plain long ago that the interests of public-service corporation stockholders must not be permitted to overshadow those

of the public served." *Id.* at 231, 599 P.2d at 187.

It has been these same notions of fairness and equitable treatment which have prompted numerous courts throughout this country to uphold the apparent universal practice to reduce a utility's rate base by the amount of contributions in aid of construction. "[C]ourt and commission decisions holding that contributions in aid of utility construction must be excluded from rate base have been so uniform as probably not to require detailed citation." 1 A.J.G. Priest, *Principles of Public Utility Regulation* 177 (1969).

The rule excluding contributions in aid of construction from rate base "is based on principles of fairness. It is inequitable to require utility customers to pay a return on property for which they, and not the utility have paid." *Princess Anne Utilities Corp. v. Commonwealth,* 211 Va. 620, 623, 179 S.E.2d 714, 716 (1971).

To force the customers and users of a utility to pay rates predicated upon the value of a facility which they themselves substantially paid for ... is the antithesis of a just and reasonable rate. Conversely, where the customers and users of a utility have substantially paid for the facilities employed in the public service, the antithesis of a just and reasonable rate is one that would permit a utility's stockholders to recover a return on money which they, in fact, never invested.

*State ex rel. Valley Sewage Co. v. Public Service Commission,* 515 S.W.2d 845, 851 (Mo.App.1974). *E.g., DuPage Utility Co. v. Illinois Commerce Commission,* 47 Ill.2d at 553–54, 267 N.E.2d at 664–65; *City of Hagerstown v. Public Service Commission,* 217 Md. 101, 141 A.2d 699 (1958); *Mississippi Public Service Commission v. Hinds County Water Co.,* 195 So.2d 71, 76 (Miss.1967); *Windham Estates Ass'n v. State,* 117 N.H. 419, 422, 374 A.2d 645, 647 (1977) (contributions in aid of construction "must be deducted from the rate base as these are funds upon which

the investors are not entitled to any return.")

In summary, we hold that the Commission properly excluded contributions in aid of construction from Cogent's rate base. A utility is entitled to a return on the fair value of its property. Ariz. Const. art. 15 § 14. It is also true, which Cogent overlooks, that a utility is entitled only to rates which are "just and reasonable." Ariz. Const. art. 15, § 3. We agree with the commentators and with the many other courts which have considered this matter, that a public service commission may properly balance the interests of the utility and its customers by recognizing the inherent unfairness in requiring a customer to pay a return on an investment to a utility which was made by the customer himself.

The judgment of the superior court is affirmed.

BROOKS and CORCORAN, JJ., concur.