145 P.3d 92 (2006)
2006-NMCA-135
Board of Education, MORIARTY MUNICIPAL SCHOOL DISTRICT, Petitioner-Appellant,
v.
THUNDER MOUNTAIN WATER COMPANY, A Public Water Utility, Respondent-Appellee.
No. 26,031.
Court of Appeals of New Mexico.
August 30, 2006.
Certiorari Granted October 19, 2006.
*94 Cuddy, Kennedy, Albetta & Ives, LLP, Joseph Van R. Clarke, Santa Fe, NM, for Appellant.
Law & Resource Planning Associates, Richard B. Cole, Albuquerque, NM, for Appellee.
Certiorari Granted, No. 30,020, October 19, 2006.

OPINION
VIGIL, Judge.
{1} This is a condemnation action filed by the Board of Education, Moriarty Municipal School District (School District) against Thunder Mountain Water Company (Thunder Mountain). As a public utility customer of Thunder Mountain, the School District was charged and paid a fee for installation of a water line extension to one of its schools as a "contribution in aid of construction" (CIAC). The School District thereafter brought an action to condemn that same water line extension and asserted it was entitled to deduct the CIAC charge from the compensation due to Thunder Mountain. The district court disagreed and granted Thunder Mountain summary judgment. We conclude that a CIAC charge is used for the purpose of setting utility rates, that it is not equivalent to the fair market value of property in a condemnation action, and that deducting the CIAC charge from the condemnation award will result in an unconstitutional taking of property without just compensation. We therefore affirm the district court.
FACTUAL AND PROCEDURAL HISTORY
{2} The property that is the subject of this condemnation action is a part of the water distribution system owned by Thunder Mountain, which was providing water service to Edgewood Middle School. The School District was constructing Edgewood Middle School in 1999, and wanted to obtain water for consumptive use and fire protection at the school, so it entered into a "Construction Contract and Water Service Agreement" (Agreement) with Thunder Mountain to obtain the water service. The Agreement required the School District to furnish Thunder Mountain all necessary easements and rights-of-way for the construction and maintenance of the water line extension. Pursuant to the Agreement, Thunder Mountain tapped into its main on the road that fronts the school and installed the water line extension on the school campus. The School District in turn paid Thunder Mountain $60,715 for installing the water line extension as a CIAC charge. Thunder Mountain is a public utility that is regulated by the New Mexico Public Regulation Commission (PRC) and the provision in the Agreement providing for the CIAC charge was required by regulations of the PRC under which Thunder Mountain operates. The Agreement further provided that Thunder Mountain was responsible for the maintenance and upkeep of the new system, that the School District would purchase water for consumptive use for the life of the school, and that Thunder Mountain would provide water for consumptive use and fire protection for the life of the school "in accordance with the rules and regulations set forth by the New Mexico Public Regulation Commission."
{3} In February 2002, the School District terminated the Agreement and decided to obtain water for the school from one of its own wells, claiming that the water provided by Thunder Mountain was corrosive and damaged the school's plumbing system. The School District then demanded that Thunder Mountain convey title of the water line extension and associated property to the School District, asserting that when it paid the CIAC charge pursuant to the Agreement, it paid for the property. Thunder Mountain refused and the School District filed its petition for eminent domain to condemn the water line extension and associated property pursuant to the Eminent Domain Code, NMSA 1978, Sections 42A-1-1 to -33 (1981, as amended through 2001) and the Special Alternative Condemnation Procedures Act, NMSA 1978, Sections 42-2-1 to -16 (1959, as amended through 1981). The specific property *95 consists of 2,700 linear feet of eight-inch water transmission line, a water meter and related valves, and approximately ten feet of stub-out of a fire protection line. The parties agree that the property has an actual value of $60,715.
{4} The School District acknowledged in its petition that Thunder Mountain owned the property, but asserted that no compensation was owed Thunder Mountain because it paid for the property when it paid the CIAC charge. In its answer, Thunder Mountain denied that the School District was entitled to deduct the CIAC charge from the value of the property and asserted that it was entitled to compensation damages equal to the value of the property as well as other damages not at issue in this case. After the School District deposited $60,877 with the clerk of the district court and the School District was given permanent possession of the property, the only question to be decided by the district court was the amount of compensation owed to Thunder Mountain. The parties then filed motions for summary judgment and responses addressing the compensation issue.
{5} The district court determined that Thunder Mountain was entitled to damages for the actual value of all the property taken by the School District, including the property contributed to Thunder Mountain as a CIAC charge and that the School District is not entitled to deduct the CIAC charge under Section 42A-1-24(D), because this statute is not applicable to contributed property. Judgment in favor of Thunder Mountain was entered in the amount of $60,715, plus statutory interest, with title to the property vesting in the School District upon payment of the judgment. The School District appeals.
{6} The material facts are undisputed. We therefore apply a de novo standard of review to the legal conclusions made by the district court. See Whittington v. State Dep't of Pub. Safety, 2004-NMCA-124, ¶ 5, 136 N.M. 503, 100 P.3d 209 (stating that our review of a summary judgment order is de novo when the material facts are undisputed); Vill. of Wagon Mound v. Mora Trust, 2003-NMCA-035, ¶ 26, 133 N.M. 373, 62 P.3d 1255 (stating that on appeal from a summary judgment order, this Court decides the legal interpretation of the facts de novo when the relevant facts are undisputed).
{7} The precise issue presented is the amount of compensation Thunder Mountain is entitled to receive for the property from the School District in light of its payment of the CIAC charge to Thunder Mountain. In this case, the CIAC charge is equivalent to the fair market value of the property condemned. Relying on cases that address the rate-making process of a regulated utility, the School District argues that it is entitled to a dollar-for-dollar credit as a matter of law. Otherwise, it asserts, the "practical effect" is to require the School District to pay for the same property twice, and Thunder Mountain will receive more than the just compensation it is entitled to for the property. The School District also argues it is entitled to deduct the CIAC payment from the compensation due to Thunder Mountain under Section 42A-1-24(D).
ABSENCE OF DOUBLE RECOVERY
{8} Thunder Mountain is a regulated utility monopoly. As such, it has agreed to exchange the freedom to determine whom it will serve, what it will charge for its service, and how it will finance or invest its resources for the freedom from competition that it enjoys. See Doña Ana Mut. Domestic Water Consumers Ass'n v. N.M. Pub. Regulation Comm'n, 2006-NMSC-032, ¶ 16, 140 N.M. 6, 139 P.3d 166. As a regulated utility, the rates it is allowed to charge for its services must be "just and reasonable" as determined by the PRC. NMSA 1978, § 62-8-1 (1953) ("Every rate made, demanded or received by any public utility shall be just and reasonable."); NMSA 1978, §§ 62-6-4 to -26.1 (2005) (establishing the PRC and setting out rate-making powers, associated duties, and procedures). In setting just and reasonable rates, the PRC "must balance the investor's interest against the ratepayer's interest." Behles v. N.M. Pub. Serv. Comm'n (In re Application of Timberon Water Co.), 114 N.M. 154, 161, 836 P.2d 73, 80 (1992).
{9} The "traditional elements" of the rate base/rate of return rate-making process to establish the revenue requirements of *96 a regulated utility are "(1) determination of the costs of the operation, (2) determination of the rate base which is the value of the property minus accrued depreciation, and (3) determination of the rate of return." Hobbs Gas Co. v. N.M. Pub. Serv. Comm'n, 94 N.M. 731, 733, 616 P.2d 1116, 1118 (1980) (citing Charles F. Phillips, Jr., The Economics of Regulation 178 (1972)). This case concerns the rate base, which is "the measure of the current value of property or investments owned by the utility in rendering service to the public." Id. Property owned by a utility such as Thunder Mountain that is obtained through a CIAC charge is not included in its rate base. In Timberon Water Co., 114 N.M. at 157, 836 P.2d at 76, our Supreme Court explained that CIAC is "cost-free capital to the utility" and is therefore deducted from the rate base for rate-making purposes with the result that depreciation on the contributed property is not permitted. Id. This approach is appropriate because depreciation permits a utility to recoup its investment, but when the property is contributed, there is nothing to be recovered. Id. Rate base should not be called upon to assist a utility in recovering an investment that the utility acquired without incurring any costs. See Rangeley Water Co. v. Rangeley Water Dist., 1997 ME 32, ¶ 17, 691 A.2d 171 ("In a rate proceeding, contributed property is not included in a utility's rate base because it would be unfair to allow the utility's investors to recoup from ratepayers money that the utility did not expend.").
{10} The School District asks us to consider Timberon and other rate-making cases to conclude that because the CIAC property is subject only "to the bare legal title" of Thunder Mountain, is considered a liability in the PRC's uniform system of accounts and is not included in Thunder Mountain's rate base, it should not be considered an asset of the utility. See Cogent Pub. Serv., Inc. v. Arizona Corporation Commission, 142 Ariz. 52, 688 P.2d 698 (1984); Princess Anne Util. Corp. v. Commonwealth ex rel. State Corp. Comm'n, 211 Va. 620, 179 S.E.2d 714, 716 (1971) (concluding it was proper to exclude contributions in aid of construction from rate base in petition to increase rates for sewage service); City of Hagerstown v. Pub. Serv. Comm'n, 217 Md. 101, 141 A.2d 699, 702, 705 (1958) (approving deduction of CIAC in setting rates for city water utility). We first note that although CIAC is a liability of a utility under the PRC uniform system of accounts, Thunder Mountain had no liability as a result of the School District's contribution because the system extension to serve the School District could not be further extended to serve other customers. As to the nature of the CIAC as an asset, the School District asks in particular that we consider City of South Bend v. Users of Sewage Disposal Facilities, 402 N.E.2d 1267, 1274-75 (Ind.Ct.App.1980) in which the court in dictum approved deducting CIAC in fixing reasonable compensation in a municipality's statutory acquisition of a utility. However, we do not find the reasoning of City of South Bend persuasive or applicable here because a traditional condemnation action was not used in that case as in this case, and the entire discussion upon which the School District relies is dictum and acknowledged as such by that court itself.
{11} We conclude that the rate making cases the School District asks us to follow are inapplicable. In United Water New Mexico, Inc. v. Public Utility Commission, 121 N.M. 272, 910 P.2d 906 (1996), the question presented to our Supreme Court was whether the Public Utilities Commission (PUC) should have jurisdiction over condemnation actions. Id. at 275, 910 P.2d at 909. Concluding that such jurisdiction by the PUC was not appropriate, the United Water court cited Dade County v. General Waterworks Corp., 267 So.2d 633, 640 (Fla.1972), in recognizing that there is a "complete dissimilarity between rate-making concepts and the just or full compensation standards which govern eminent domain," and that rate-making concepts are not properly a basis for determining fair market value. United Water, 121 N.M. at 279, 910 P.2d at 913 (internal quotation marks and citation omitted). Furthermore, the United Water court observed that the amount of compensation to be determined in an eminent domain case "cannot be limited by an administrative agency either directly or indirectly." Id. We therefore *97 turn to condemnation cases and principles to answer the question presented in this case.
{12} The School District exercised its right to acquire the water line extension belonging to Thunder Mountain by eminent domain. The Takings Clause of the Fifth Amendment to the United States Constitution provides, "[P]rivate property [shall not] be taken for public use, without just compensation" and Article II, Section 20 of the New Mexico Constitution states, "Private property shall not be taken or damaged for public use without just compensation." Thunder Mountain is constitutionally entitled to "just compensation" for the taking. See Manning v. Mining & Minerals Div., 2006-NMSC-027, ¶ 10, ___ N.M. ___, 144 P.3d 87 (stating that just compensation is the specific remedy of the Takings Clause in the Fifth Amendment); City of Sunland Park v. Santa Teresa Servs. Co., 2003-NMCA-106, ¶ 43, 134 N.M. 243, 75 P.3d 843 ("The primary condition to the exercise of eminent domain is the constitutional requirement to pay just compensation."). It is entitled to the fair market value of the property on the date of the taking. UJI 13-703 NMRA. Condemnation cases teach that property contributed to the utility by a CIAC is not excluded from just compensation.
{13} The case which we find most similar to the one before us is Rangeley Water Co. v. Rangeley Water Dist., 1997 ME 32, 691 A.2d 171. The condemning authority challenged the valuation of the assets of a water company it condemned, including a 1200 foot water line which attached to a main line and extended to a three-building condominium complex to provide water service to nine condominiums in three buildings. Id. ¶¶ 1, 13. Specifically, the condemning authority claimed that the line should not have been included in the valuation because the water line was contributed property (i.e., CIAC) and the water company did not pay to acquire it. Id. ¶ 17. The Maine Supreme Court rejected this argument and held that the water company was entitled to be compensated for the water line because rate-making cannot be equated with eminent domain as a basis for determining fair market value in light of the "complete dissimilarity" between just compensation standards and rate-making concepts. Id. ¶ 18. The Maryland Court of Appeals has also considered the same question and arrived at the same conclusion. Wash. Suburban Sanitary Comm'n v. Util., Inc. of Md., 365 Md. 1, 775 A.2d 1178, 1194 (2001) (holding that a statute that required that the value of all property that was contributed to the utility as CIAC be deducted in an eminent domain proceeding violated the constitutional prohibition against a taking without just compensation); see also Dade County, 267 So.2d at 639-40 (agreeing that because of differences between rate-making and condemnation, a utility property owner is entitled to be compensated for property taken by eminent domain that was contributed to the utility as CIAC); Onondaga County Water Auth. v. N.Y. Water Serv. Corp., 285 A.D. 655, 139 N.Y.S.2d 755, 763 (N.Y.App.Div.1955) ("[B]y virtue of the vast distinction between the value for rate-making and the value of property for purchase or condemnation, this measure of value should not, and seldom does, carry much weight in the determination of just compensation.").
{14} The nub of this case is whether the unique circumstances presented require a different result. Unlike Rangeley, in this case the condemning authority contributed the property at issue. In addition, the amount of the School District's contribution is, by stipulation of the parties, the fair market value of the property. The transparency of the circumstances gives appeal to the School District's argument that it is unfair for the School District to pay twice for the property.
{15} But this argument fails based on condemnation principles. Unless the School District, as condemnor, pays for the property, Thunder Mountain will not receive its just compensation for the property in the condemnation. The School District's CIAC is a separate act from the condemnation. The CIAC enabled Thunder Mountain, as a regulated utility, to provide service to the School District. Because the School District paid the charge, required by the PRC, the cost was not passed on to other customers of Thunder Mountain, thus achieving the statutory goal of imposing just and reasonable *98 rates for all of Thunder Mountain's customers. The School District, thereafter, decided to change course and provide its own service. Because Thunder Mountain had established the system through the CIAC and had undertaken the service, the School District had to undertake condemnation proceedings. In those proceedings, Thunder Mountain is entitled to just compensation. Regardless of the manner in which Thunder Mountain acquired the property or carries it in its books, it has the title to the property and has used it to provide utility service.
{16} Therefore, we cannot agree with the School District that Thunder Mountain receives a "windfall" under the district court's order resulting in unjust compensation. Instead, we conclude that deducting the CIAC payment from the condemnation award would unconstitutionally deprive Thunder Mountain of its property without just compensation.
APPLICABILITY OF SECTION 42A-1-24(D)
{17} "Interpretation of statutes and their application to facts require de novo review." Crutchfield v. N.M. Dep't of Taxation & Revenue, 2005-NMCA-022, ¶ 16, 137 N.M. 26, 106 P.3d 1273. The School District argues that Section 42A-1-24(D) mandates that it receive credit for the sums it paid to Thunder Mountain for installing the water line. We disagree.
{18} Section 42A-1-24(D) is a section of the Eminent Domain Code which states:
The judgment shall credit against the total amount awarded to the condemnee any payments or deposits paid over to him made before the date of entry of judgment by the condemnor as compensation for the property taken, including any funds which the condemnee withdrew from the amount deposited by the condemnor pursuant to the provisions of Section 42A-1-19 or 42A-1-22[.]
(emphasis added). The plain language of this statute clearly indicates that the sum paid by the School District as contribution in aid of construction does not entitle the School District to credit against the total amount awarded to Thunder Mountain under the Eminent Domain Code. See Alba v. Peoples Energy Res. Corp., 2004-NMCA-084, ¶ 17, 136 N.M. 79, 94 P.3d 822 (stating that the "primary indicator" of the legislature's intent is the plain language of the statute, and we are to give the words used in the statute their ordinary meaning unless the legislature indicates a different intent). This statute states that the credit applies to sums paid as "compensation for the property taken." Section 42A-1-24(D). The $60,715 paid by the School District in 1999, was a contractual obligation made in "contribution in aid of construction" so that the School District could obtain water service, not so that the School District could take the property by condemnation as it subsequently did in 2002. We therefore decline to extend Section 42A-1-24(D) to apply to the CIAC paid by the School District.
CONCLUSION
{19} For the reason stated above, we affirm the order of the district court.
{20} IT IS SO ORDERED.
WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge, and JAMES J. WECHSLER, Judge.