2007-NMSC-031

161 P.3d 869

**BOARD OF EDUCATION, MORIARTY MUNICIPAL SCHOOL DISTRICT, Plaintiff–Petitioner,**

v.

**THUNDER MOUNTAIN WATER COMPANY, a public water utility, Defendant–Respondent.**

No. 30,020.

Supreme Court of New Mexico.

June 1, 2007.

Cuddy, Kennedy, Albetta & Ives, L.L.P., Frank J. Albetta, Melissa Wurtzel O'Shea, Santa Fe, NM, for Petitioner.

Keleher & McLeod, P.A., Richard B. Cole, Albuquerque, NM, for Respondent.

## OPINION

MINZNER, Justice.

{1} Petitioner Board of Education, Moriarty Municipal School District (School District) appeals from an opinion of the Court of Appeals, which affirmed the district court's decision that the School District must pay Respondent Thunder Mountain Water Company (Thunder Mountain) the fair market value of its property in a condemnation action and that deducting the amount of a "contribution in aid of construction" (CIAC) from the condemnation award would result in an unconstitutional taking of property without just compensation. *Moriarty Mun. Sch. Dist. v. Thunder Mountain Water Co.*, 2006–NMCA–135, ¶ 1, 140 N.M. 612, 145 P.3d 92. We hold that the School District must pay Thunder Mountain the fair market value of the property. We also hold that NMSA 1978, Section 42A–1–24(D) (2001) does not authorize a deduction of the amount of a CIAC previously paid by a condemnor from the amount owed the condemnee as just compensation for the taking. We therefore affirm the Court of Appeals.

## I. Background

{2} The School District entered into a Construction Contract and Water Service Agreement (Agreement) with Thunder Mountain in October 1999, which provided for construction of a water line extension and consumptive-use water and fire protection service to the new Edgewood Middle School. The School District, a public utility customer of Thunder Mountain, was required to contribute to the installation of the water line extension pursuant to New Mexico Public Regulation Commission Rule 19. Customer Service Rules and Regulations for Water

Utilities, New Mexico Public Regulation Commission, 17.12.760 NMAC (6/30/1988). It appears the School District paid a total of about $69,185 to Thunder Mountain for construction of the water line, the meter, valves, and approximately ten feet of a fire protection water line, and the related equipment, labor, and costs. Several years later, in November 2002, the School District filed a condemnation action and asserted it was entitled to deduct the amount of the CIAC from the compensation due to Thunder Mountain. The parties apparently agreed for purposes of the motion for summary judgment that the amount required of the School District in 1999 was the fair market value of the property in 2002. *Thunder Mountain*, 2006–NMCA–135, ¶¶ 6–7, 14, 140 N.M. 612, 145 P.3d 92.

{3} The School District filed a petition for eminent domain to condemn the water line extension and associated property in accordance with the Eminent Domain Code, NMSA 1978, Sections 42A–1–1 to –33 (1981, as amended through 2001) and the Special Alternative Condemnation Procedure Act, NMSA 1978, Sections 42–2–1 to –16 (1959, as amended through 1981). Although the Agreement is silent on the issue, the district court concluded that the contributed property is the lawful property of Thunder Mountain. The parties agree the disputed property has an actual value of $60,715 and includes 2,700 linear feet of eight-inch water transmission line, a water meter and related valves, and approximately ten feet of stub-out of a fire protection line. The district court also concluded Thunder Mountain was entitled to damages for the actual value of the property and that the School District was not entitled to a credit pursuant to Section 42A–1–24(D) for the value of the CIAC. The district court entered summary judgment in favor of Thunder Mountain on Thunder Mountain's motion in the amount of $60,715, plus statutory interest. The judgment ordered that title to the property would vest in the School District upon payment of the judgment.

{4} The School District appealed. Affirming the district court, the Court of Appeals held that deducting the amount of the CIAC paid by the School District from the condemnation award would result in an unconstitutional taking of property without just compensation and that Section 42A–1–24(D) is not applicable. *Thunder Mountain*, 2006–NMCA–135, ¶¶ 1, 18, 140 N.M. 612, 145 P.3d 92. The School District petitioned for certiorari to this Court, and we granted the petition. 2006–NMCERT–10, 140 N.M. 675, 146 P.3d 810.

{5} On appeal, the School District argues it is being forced to pay Thunder Mountain twice for the disputed property, resulting in unjust enrichment, that this result is contrary to the state Constitution Anti–Donation Clause, *see* N.M. Const. art. IX, Section 14, and that Section 42A–1–24(D) authorizes a deduction of the amount of the CIAC from the just compensation required by the taking of the disputed property. We conclude that eminent domain principles require the School District to pay Thunder Mountain the fair market value of the disputed property and that Section 42A–1–24(D) is not applicable. We are not persuaded that principles of unjust enrichment support the School District's argument. We do not address the Anti–Donation Clause argument.

## II. Discussion

{6} Because the material facts are undisputed, we review the district court's grant of summary judgment de novo. *See Ulibarri v. State of N.M. Corr. Acad.*, 2006–NMSC–009, ¶ 7, 139 N.M. 193, 131 P.3d 43. The two issues we are asked to address are: whether a condemnor who previously paid a condemnee utility a CIAC must pay the condemnee for the same property in a condemnation action, when the fair market value of the property is essentially the same amount as the CIAC, and whether Section 42A–1–24(D) authorizes a deduction of the amount of a CIAC previously paid by the condemnor from the amount owed the condemnee as compensation for the taking. For the following reasons, we hold that the School District must pay Thunder Mountain the fair market value of the property and that the School District is not entitled under Section 42A–1–24(D) to deduct the amount of the CIAC.

## A. Just Compensation is Not Double Recovery

■ {7} Thunder Mountain is a public utility regulated by the New Mexico Public Regulation Commission (PRC). As a regulated monopoly, Thunder Mountain agrees to cede control of the freedom to determine who it will serve, what it will charge for its service, and how it will finance or invest its resources in exchange for the freedom from competition it enjoys. *Doña Ana Mut. Domestic Water Consumers Ass'n v. N.M. Pub. Regulation Comm'n,* 2006–NMSC–032, ¶ 16, 140 N.M. 6, 139 P.3d 166. The PRC is charged with setting rates, regulating public utilities, and limiting competition to prevent duplication and waste. *Id.;* NMSA 1978, §§ 62–6–4 to –26.1 (1941, as amended through 2003); § 62–9–1 (2005). Thunder Mountain may charge rates for its services that are determined to be "just and reasonable" by the PRC. NMSA 1978, § 62–8–1 (1953); §§ 62–6–4 to –26.1. *See Thunder Mountain,* 2006–NMCA–135, ¶ 8, 140 N.M. 612, 145 P.3d 92.

■ {8} Thunder Mountain has a fundamental right, guaranteed to it by the federal and state Constitutions, that its property shall not be taken without just compensation. U.S. Const. amend. V. The Fifth Amendment does not forbid the School District's taking of the property; it does forbid taking without just compensation. Our state Constitution provides similar protection. N.M. Const. art. II, § 20. The Court of Appeals correctly held that deducting a CIAC from the condemnation award would result in an unconstitutional deprivation of Thunder Mountain's property without just compensation. *Thunder Mountain,* 2006–NMCA–135, ¶ 16, 140 N.M. 612, 145 P.3d 92; *accord Dade County v. Gen. Waterworks Corp.,* 267 So.2d 633, 639–40 (Fla.1972) (recognizing that how the utility came to own the property does not effectively exclude it from constitutional protections); *Rangeley Water Co. v. Rangeley Water Dist.,* 1997 ME 32, ¶ 18, 691 A.2d 171 (holding utility was entitled to compensation for contributed property because rate-making concepts cannot be likened to eminent domain as a basis for determining fair market value); *Washington Suburban Sanitary Comm'n v.* *Util., Inc. of Md.,* 365 Md. 1, 775 A.2d 1178, 1194 (2001) (holding statute requiring the value of all property contributed to the utility as a CIAC be deducted in an eminent domain proceeding violated the constitutional prohibition against a taking without just compensation); *Dedeaux Util. Co., Inc. v. City of Gulfport,* 938 So.2d 838, ¶¶ 7–11 (Miss.2006) (noting that exclusion of CIACs in compensation cases was not proper).

{9} The Court of Appeals found *Rangeley* helpful to its determination that the School District must pay Thunder Mountain the fair market value of the disputed property. *Thunder Mountain,* 2006–NMCA–135, ¶ 13, 140 N.M. 612, 145 P.3d 92. Like the School District, the condemnor in *Rangeley* alleged it should not have to pay for condemned property that was contributed to the water utility. *Rangeley,* 1997 ME 32, ¶ 17, 691 A.2d 171. The Maine Supreme Court disagreed and held the water company was entitled to *just compensation* for the contributed property because of the "complete dissimilarity" between rate-making standards and just compensation standards. *Id.* ¶ 18. It is this "complete dissimilarity," noted by the Court of Appeals, that is compelling. There is a fundamental difference between payment of the CIAC as a contractual obligation and just compensation in eminent domain actions. *Thunder Mountain,* 2006–NMCA–135, ¶¶ 13–15, 140 N.M. 612, 145 P.3d 92. Just compensation is not double recovery.

{10} *Dade County* also supports our conclusion. In *Dade County,* the county initiated condemnation proceedings against a number of privately-operated water companies and claimed it should not have to compensate the companies for contributed property. 267 So.2d at 634–35. The Florida Supreme Court rejected this argument, holding the contributed property constituted "property" under the Florida Constitution and that as such, contributed property was required to be included in the method of valuation when determining fair market value for the purposes of just compensation. *Id.* at 639–41.

{11} In *Washington Suburban Sanitary Commission,* 775 A.2d at 1194, the Maryland Court of Appeals held that a statute requir-

ing a deduction of a CIAC from the fair market value of condemned property effected a taking of property without just compensation. The court concluded that valuation of condemned property must ensure that "as the end result of the exercise of the power of eminent domain, the owner will be receiving the equivalent monetary worth for the value of the property taken from the time of taking." *Id.* at 1196 (*quoting Orono–Veazie Water Dist. v. Penobscot County Water Co.,* 348 A.2d 249, 255 (Me.1975)).

{12} The School District insists our conclusion results in an unfair disposition. The School District argues the crux of these condemnation cases is that fair market value be paid to the utility, which it argues was paid when it paid the CIAC. However, the payments it wishes to equate represent two distinct recoveries by Thunder Mountain, separated by three years. The first was mandated by the PRC, when the School District elected to request water service from Thunder Mountain; the second was mandated as a matter of constitutional law when the School District elected to initiate a condemnation action. We have neither found, nor been referred to, a case involving a condemnation action such as this in which a court held that CIACs were unprotected by the constitutional requirement that just compensation be paid for a taking.

{13} During the three years that separate the two recoveries, the School District had the benefit of the facilities Thunder Mountain constructed. The water supplied proved unsatisfactory to the School District and it terminated the contract. The School District's claim of unjust enrichment overlooks the fact Thunder Mountain was required to supply water by the PRC and that the School District was required to contribute to the construction of appropriate facilities by the PRC. The term used was "contribution." The contract and its terms were controlled by the PRC. That fact makes it difficult to conclude that any benefit to Thunder Mountain was unjust or that there was a burden on the School District that justifies application of equitable principles. Both the School District and Thunder Mountain are the beneficiaries of public policy. The School District

obtained water; Thunder Mountain, which was required to supply water, received financial assistance in fulfilling the requirement.

{14} When applied to other scenarios, the School District's position is untenable. For example, imagine a third party originally requested the waterline extension and paid the CIAC, and that the School District then took over the property receiving water service from Thunder Mountain and later initiated a condemnation action. Surely, under these facts, the School District would not argue that because a CIAC had been paid by a third party, the School District should not have to provide Thunder Mountain just compensation. The School District contends the Court of Appeals applied an overly formalistic approach in reaching its decision. We are not persuaded that the approach is either overly formalistic or otherwise wrong. The disputed property belongs to Thunder Mountain, and the School District must provide Thunder Mountain just compensation for its taking.

{15} The Court of Appeals correctly recognized that a CIAC cannot be included in a utility's rate base. *Thunder Mountain,* 2006–NMCA–135, ¶ 9, 140 N.M. 612, 145 P.3d 92; *see also Behles v. N.M. Pub. Serv. Comm'n (In re Application of Timberon Water Co.),* 114 N.M. 154, 157, 836 P.2d 73, 76 (1992) (explaining that it would be unfair to require customers who paid a CIAC to then pay rates based on the value of facilities they themselves financed); *Rangeley,* 1997 ME 32, ¶ 17, 691 A.2d 171 ("In a rate proceeding, contributed property is not included in a utility's rate base because it would be unfair to allow the utility's investors to recoup from ratepayers money that the utility did not expend."). As the Court of Appeals noted, the " 'traditional elements' of the rate base/ rate of return rate-making process to establish the revenue requirements of a regulated utility are '(1) determination of the costs of the operation, (2) determination of the rate base which is the value of the property minus accrued depreciation, and (3) ·determination of the rate of return.' " *Thunder Mountain,* 2006–NMCA–135, ¶ 9, 140 N.M. 612, 145 P.3d 92 (quoting *Hobbs Gas Co. v. N.M. Pub. Serv. Comm'n,* 94 N.M. 731, 733, 616 P.2d

1116, 1118 (1980)). After deciding that rate-making cases are inapplicable to the issues presented by this case, the Court of Appeals properly determined that condemnation cases dictate that a CIAC cannot be excluded from the computation of just compensation. *Thunder Mountain*, 2006–NMCA–135, ¶¶ 11–12, 140 N.M. 612, 145 P.3d 92. There is no indication the Court of Appeals thought the rate-making cases controlled the disposition of the School District's claim. That is, there is no indication the Court of Appeals thought that because the value of a CIAC is excluded from the calculation of value in determining rate base and depreciation allowed, that the value of the CIAC the School District was required to contribute should be excluded from consideration of value in the eminent domain proceedings.

{16} The School District argues it is not suggesting the rate-making cases support an argument that because the value of the CIAC is not permitted to be included in Thunder Mountain's rate base it should not be considered an asset of the utility. Instead, the School District insists, relying on *City of Hagerstown v. Public Service Commission*, the rate-making cases are applicable because they indicate that property to which the District made a CIAC is Thunder Mountain's property only in the sense that it holds bare legal title and any compensation provided at this point would result in a "windfall" to the utility. 217 Md. 101, 141 A.2d 699, 705 (1958). The Maryland Court of Appeals noted that the rationale for excluding CIACs from the rate base is "that it is inequitable to require consumers to pay to the utility a return on property which they, not the utility, have paid for." *Id.* at 704.

{17} The court reasoned that
the utility holds legal title to the contributed property, on the ground that the contributed property is subject to contractual rights in favor of those who furnished it (treating a developer as if he were the agent of those who buy lots served by the contributed facilities), which place the beneficial use of the property in those who, from time to time, own the lots, houses, factories or lands which the water company (in this case the City) has agreed to serve, so that the value of the water company's bare legal title to the property is nothing. In other words, the water company (here the City) is simply in the position of a trustee, holding legal title to the contributed property for the benefit of those with whom it has contracted, or their successors in interest.

*Id.* at 705.

{18} We think the reasoning of the Maryland court may identify a rationale for excluding contributed property from the rate base. In *Hagerstown*, the Maryland court was discussing the relevance of contributed property in determining value for purposes of rate-making, not the relevance of contributed property for determining value for purposes of condemnation proceedings. *Washington Suburban Sanitary Commission*, a 2001 opinion from the same court, in fact, noted that *Hagerstown* was only applicable in the context of rate-making cases. *Wash. Suburban Sanitary Comm'n*, 775 A.2d at 1194–95. The distinction is important because "[a] utility valuation, by whatever approach, that is premised on a regulatory rate base that excludes significant utility assets [such as CIACs] usually results in less-than-just compensation for all property taken." 8 Patrick J. Rohan & Melvin A. Reskin, *Nichols on Eminent Domain*, § 14A.06(1)(b) (3d ed. rev.2007).

{19} The School District maintains that the Court of Appeals' decision that it must pay Thunder Mountain the fair market value of the property based on a distinction between condemnation cases and rate-making cases is erroneous. The School District asks this Court to hold that fair market value has already been paid, making the need for just compensation unnecessary because any other result would enrich Thunder Mountain unjustly. However, the district court determined that Thunder Mountain is the owner of the disputed property. The School District has identified no basis for recognizing equitable title when it was required to pay the CIAC, and we conclude the district court's determination that Thunder Mountain owned the property being condemned was appropriate.

{20} The School District's argument does not distinguish between the required CIAC under the PRC regulations and the constitutional implications of an eminent domain action. These are two separate proceedings. Thunder Mountain remains powerless in both of these actions; the School District was required to pay the CIAC according to PRC rules, not Thunder Mountain policies. PRC Rule 19 requires the School District to pay a CIAC and mandates that when an extension of a utility's lines is required to serve a new customer,

[i]nvestment in the line extension required to serve the applicant may be required to be paid in total by the applicant requesting the extension in the form of an Advance for Construction or a Contribution in Aid of Construction.

The Company shall not under any condition make an extension that would be unprofitable and thereby cause undue financial burden to existing customers, which means that there shall result no increase in rates for service to existing customers....

Paragraphs 2–3 of 17.12.760.10 NMAC. Ordinarily, pursuant to PRC Rule 19, the contributor becomes entitled to refunds for its CIAC when other customers need service from that line. On these facts, however, the configuration of the line may have precluded any other customer from utilizing the line. *Thunder Mountain*, 2006–NMCA–135, ¶ 10. Nevertheless, Rule 19 provides that "the [t]otal construction cost for the line extension may be paid as an advance in aid of construction by the applicant, but the advance may be subject to future refunds to that applicant when water service is connected to each abutting or benefited [sic] property *up to ten (10) years.*" Paragraph 5(B)(II) of 17.12.760.10 NMAC (emphasis added). The ten-year limit indicates to us that while the PRC allows customers to recoup at least a portion of their expenses, these customers have no equitable title in property paid for by CIACs. Additionally, the contract between Thunder Mountain and the School District states that Thunder Mountain was responsible for all maintenance and upkeep of the extension. This is a further indication that both parties considered the property to belong to Thunder Mountain and that there is no basis for an application of equitable principles on the facts of this case.

## B.  Application of Section 42A–1–24(D)

■ {21} The New Mexico Eminent Domain Code requires that

[j]udgment shall credit against the total amount awarded to the condemnee any payments or deposits paid over to him made before the date of entry of judgment by the condemnor as compensation for the property taken, including any funds which the condemnee withdrew from the amount deposited by the condemnor pursuant to the provisions of Section 42A–1–19 or 42A–1–22 NMSA 1978.

Section 42A–1–24(D). The School District urges this Court to hold that the Code contemplates that *all* amounts paid to Thunder Mountain should be credited. However, this argument ignores the fact that the CIAC paid to Thunder Mountain was part of a contractual obligation mandated by the PRC. This is not the sort of payment the Legislature envisioned when drafting Section 42A–1–24(D). Rather, the statute contemplates prepayments or deposits, neither of which is at issue here.

## III.  Conclusion

{22} The School District and Thunder Mountain entered into a contractual agreement regarding water service. The CIAC the School District paid to Thunder Mountain was required by the PRC and was part of the contract. There is no nexus between the School District's contractual obligation and just compensation for the taking of the disputed property in this condemnation action. The district court found that Section 42A–1–24(D) is not applicable to contributed property. The Court of Appeals also held the statute does not apply in the manner the School District proposes. "The $60,715 paid by the School District in 1999, was a contractual obligation [incurred by the School District so that it] could obtain water service, not so that the School District could take the property by condemnation as it subsequently did in 2002." *Thunder Mountain*, 2006–NMCA–135, ¶ 18.

{23} The CIAC the School District paid Thunder Mountain was a sum required of the School District at the time of construction to support construction. In the condemnation action before the district court, the award made by the district court was a sum required by constitutional law as just compensation for a taking. We conclude Section 42A–1–24(D) does not require a different result. For these reasons, we affirm the district court and the Court of Appeals.

{24} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, PETRA JIMENEZ MAES, RICHARD C. BOSSON, Justices.