IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMSC-018

Filing Date: May 9, 2013

Docket No. 33,182

MOONGATE WATER COMPANY, INC.,
a New Mexico Public Utility,

      Plaintiff-Petitioner,

v.

CITY OF LAS CRUCES,

      Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Robert E. Robles, District Judge

Tucker Law Firm, P.C.
Steven L. Tucker
Santa Fe, NM

William A. Walker, Jr., P.C.
William A. Walker, Jr.
Las Cruces, NM

for Petitioner

Keleher & McLeod, P.A.
W. Spencer Reid
Thomas C. Bird
Kurt Wihl
S. Charles Archuleta
Albuquerque, NM

Marcia B. Driggers
Las Cruces, NM

for Respondent

1

**OPINION**

**CHÁVEZ, Justice.**

**{1}** The Public Regulation Commission (PRC) issued Moongate Water Company (Moongate) a certificate of public convenience and necessity (CCN) authorizing Moongate, as a public utility, to provide water to an area located outside the city limits of Las Cruces, New Mexico, which we shall label the "certificated area." Las Cruces later annexed three undeveloped tracts of land within Moongate's certificated area, and Las Cruces committed itself to provide water to this area despite Moongate's CCN. We address two questions in this appeal. First, does Moongate have a right to provide water within the certificated area to the exclusion of Las Cruces? Second, did Las Cruces engage in an unlawful taking of Moongate's property entitling Moongate to just compensation when Las Cruces chose to provide water within the certificated area? We answer the first question in the negative because Las Cruces is not subject to the Public Utilities Act (the PUA), NMSA 1978, Sections 62-1-1 to -6-28 (1884, as amended through 2003) and NMSA 1978, Sections 62-8-1 to -13-15 (1941, as amended through 2003).[1] We also answer the second question in the negative because on the record before us, Moongate has not proven that it had established infrastructure and was already serving customers in the annexed area. Absent such proof of a tangible loss, a public utility is not entitled to just compensation when a municipality lawfully exercises its right to serve in the public utility's certificated area. We therefore affirm the Court of Appeals and reverse the district court.

**BACKGROUND**

**{2}** In 1983 the PRC issued Moongate, as a public utility, a CCN that was extended in 1984, authorizing Moongate to provide water services in an area which at the time was outside the Las Cruces city limits. Las Cruces, a home-rule municipality, subsequently annexed three undeveloped tracts of land within Moongate's certificated area, subdivided the land, and committed itself to provide the subdivisions with municipal water service. Moongate filed a complaint against Las Cruces seeking (1) an injunction and declaratory judgment stating that Moongate was exclusively authorized to serve the three subdivisions, (2) compensation for inverse condemnation of its allegedly exclusive right to serve the subdivisions, and (3) compensation for a regulatory taking of its alleged exclusive right to serve.

**{3}** Las Cruces filed a motion for summary judgment on all counts of the complaint, and Moongate filed a memorandum in opposition and cross-motion for summary judgment on the second and third counts (inverse condemnation and regulatory takings issues). The district court granted Moongate's motion on the second and third counts, and concluded that because Moongate's rights under the CCN were exclusive, Las Cruces was liable for

---

[1]S*ee* NMSA 1978, § 62-13-1 (1993) (defining the PUA).

damages as a result of the taking or inverse condemnation to the extent that damages could be proven. The district court held a trial on the issue of damages and ultimately concluded that Moongate had failed to prove damages; therefore, none were awarded.

**{4}** Moongate appealed to the Court of Appeals on the issue of damages. Las Cruces appealed the district court's determination that Moongate's rights were exclusive and that there had been a taking. The Court of Appeals reversed the district court's determination that the CCN guaranteed Moongate exclusive service rights. *Moongate Water Co. v. City of Las Cruces*, 2012-NMCA-003, ¶ 2, 269 P.3d 1. The Court also concluded that the district court erred in granting summary judgment in Moongate's favor because the grant was based on the district court's finding that Moongate had exclusive service rights under its CCN. *Id.* ¶ 27. Moongate appealed to this Court, and we granted certiorari. *Moongate Water Co. v. Las Cruces*, 2012-NMCERT-001, 291 P.3d 599.

**{5}** Moongate argues that (1) its CCN is a "valuable property right[]" and gives it the exclusive right to provide water in the certificated area, and although the PRC cannot regulate municipalities operating outside of the PUA such as Las Cruces, those municipalities cannot override the rights granted to public utilities by the PRC; (2) the only way that an unregulated municipality may take over or invade a certificated area is to either submit to PRC regulation or effectuate a taking via the power of eminent domain; and (3) by invading Moongate's certificated area, Las Cruces has "damaged" Moongate's property, thereby effectuating a taking that requires just compensation.

**DISCUSSION**

**{6}** This case hinges on the interpretation of various statutes. Statutory interpretation is an issue of law that we review de novo. *Pub. Serv. Co. of N.M. v. N.M. Pub. Util. Comm'n*, 1999-NMSC-040, ¶ 14, 128 N.M. 309, 992 P.2d 860. When this Court construes statutes, "our charge is to determine and give effect to the Legislature's intent." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135. In doing so, we employ canons of statutory construction, and look first to the plain meaning of the statute. *Id.* We give words their ordinary meaning, and if the statute is clear and unambiguous, we "refrain from further statutory interpretation." *Id.* (internal quotation marks and citation omitted).

**A. MOONGATE'S CCN DOES NOT PREVENT LAS CRUCES FROM COMPETING WITH MOONGATE IN ITS CERTIFICATED AREA**

**{7}** The PUA is "a comprehensive regulatory scheme granting the PRC the policy-making authority to plan and coordinate the activities of New Mexico public utilities." *Doña Ana Mut. Domestic Water Consumers Ass'n v. N.M. Pub. Regulation Comm'n*, 2006-NMSC-032, ¶ 16, 140 N.M. 6, 139 P.3d 166. The PRC has the authority and responsibility to issue CCNs, which must be obtained by public utilities prior to any construction, operation, or extension of any public utility plant or system. Section 62-9-1(A).

3

**{8}**     However, with two exceptions, municipalities are not subject to the PUA. *Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 120 N.M. 579, 588, 904 P.2d 28, 37 (1995). The first exception that would bring a municipality under the PRC's authority is set forth in NMSA 1978, Section 62-6-5 (1993). It allows municipalities to "elect to come within the provisions of [the PUA] and to have the utilities owned and operated by it, either directly or through a municipally owned corporation, regulated and supervised under the provisions of [the PUA]." Las Cruces has not elected to become subject to the PUA, and therefore this exception is inapplicable to this case. The second exception brings municipalities with a population of more than 200,000 within the provisions of the PUA in certain circumstances. NMSA 1978, § 62-9-1.1(A), (C) (1991); *Morningstar*, 120 N.M. at 588, 904 P.2d at 37. Las Cruces does not have a population of more than 200,000, and therefore Las Cruces is not subject to the PUA.

**{9}**     Instead, municipalities are regulated under the provisions of NMSA 1978, Sections 3-23-1 to -10 (1953, as amended through 2001), and NMSA 1978, Sections 3-27-1 to -9 (1953, as amended through 1994). Therefore, while the PRC has exclusive jurisdiction to regulate public utilities, it has no authority over utilities owned and operated by most municipalities. NMSA 1978, § 62-6-4(A) (2003) ("The [PRC] shall have general and exclusive power and jurisdiction to regulate and supervise every public utility . . . . Nothing in this section, however, shall be deemed to confer upon the commission power or jurisdiction to regulate or supervise the rates or service of any utility owned and operated by any municipal corporation . . . .").

**{10}**     If Las Cruces were subject to the PUA, the outcome would be clear. Section 62-9-1.1(A) describes the situation at hand and requires a specific remedy:

> Notwithstanding any other provision of the [PUA], or any provision of the Municipal Code, or any privilege granted under either act, if any municipality that has not elected to come within the terms of the [PUA] . . . constructs or extends or proposes to construct or extend its water or sewer line or system or water pumping station or reservoir into a geographical area described in a [CCN] granted by the [PRC] to a public utility rendering the same type of service, the [PRC], on complaint of the public utility claiming to be injuriously affected thereby, shall, after giving notice to the municipality and affording the municipality an opportunity for a hearing with respect to the issue of whether its water or sewer line, plant or system actually intrudes or will intrude into the area certificated to the public utility, determine whether such intrusion has occurred or will occur. If the [PRC] determines such an intrusion has occurred or will occur, the municipality owning or operating the water or sewer utility shall cease and desist from making such construction or extension in the absence of written consent of the public utility involved and approval of the [PRC].

This language clearly describes resolution of disputes between public utilities and

4

municipalities not otherwise subject to the PUA when a municipality invades a certificated area. However, this section still does not resolve the problem in the present case, since Subsection C provides that "[f]or purposes of this section, 'municipality' means any municipality that has a population of more than two hundred thousand." Section 62-9-1.1(C). Thus, this section does not apply to Las Cruces. The Legislature expressed its clear intention to exclude smaller municipalities from the limits placed on larger municipalities that invade a certificated area.

**{11}** Moongate argues that despite the plain meaning of Section 62-9-1.1(C), the expression of policy set forth in NMSA 1978, Section 62-3-2.1 (1991), requires this Court to hold that Las Cruces cannot invade Moongate's certificated area. Section 62-3-2.1(C) explains:

> A rational basis exists to prohibit intrusion of municipal water or sewer facilities or service into areas in which a public utility furnishes regulated services until that municipality elects to come within the terms of the [PUA], in which event both systems will be brought into parity of treatment with respect to the [PRC]'s independent jurisdiction and power to prevent unreasonable interference between competing plants, lines and systems. Without such controls as provided by Section 62-9-1.1 NMSA 1978, the declared policy of the [PUA], the provision of reasonable and proper utility services at fair, just and reasonable rates and the general welfare, business and industry of the state may be frustrated.

**{12}** We agree with the Court of Appeals' discussion of this particular statutory language. *See Moongate*, 2012-NMCA-003, ¶¶ 18, 20-21. The Legislature expressed a desire to prohibit unreasonable municipal intrusion into territory that is already being served by public utilities, but it failed to enact any operative language, other than Section 62-9-1.1, to accomplish that goal. Because Section 62-9-1.1(C) explicitly excludes municipalities with a population of less than 200,000, we cannot construe either it or Section 62-3-2.1 as prohibiting Las Cruces from competing with Moongate in the certificated area at issue. Indeed, nothing in either the PUA or the statutory sections that regulate municipalities stops Las Cruces from providing service in the certificated area. Here, the area at issue was annexed by Las Cruces, which extended the corporate boundaries of the city, and it is therefore clear that Las Cruces may provide water in the certificated area. In fact, pursuant to Section 3-27-8(A), municipalities that operate a water system are authorized to furnish water even outside their corporate boundaries. Thus, contrary to Moongate's assertions, Las Cruces may provide utility service in the certificated area, even though the city has not elected to come under the provisions of the PUA.

**{13}** We addressed an analogous situation in *Morningstar*, 120 N.M. at 581, 904 P.2d at 30, when a municipality extended its water services into territory that had previously been exclusively served by a water users' association. The water users' association argued that the municipality was encroaching on its service area and sought protection under the PUA

5

by filing a complaint with the PRC. *Id.* at 582, 904 P.2d at 31. We held that the water users' association could not invoke the protections set forth in Section 62-9-1.1(A) because the municipality was not subject to the PUA under either exception. *Morningstar*, 120 N.M. at 588, 904 P.2d at 37. Similarly, in this case, Las Cruces is not subject to the PUA, which means that Moongate cannot invoke any protections set forth in the provisions in the PUA, including those contained in Section 62-9-1.1. *Morningstar*, 120 N.M. at 588, 904 P.2d at 37. While the Legislature is clearly concerned about possible encroachment by municipalities into public utilities' service areas, it also made clear that the protections contained in the PUA do not cover municipalities except under very limited circumstances.

{14}    Moongate has called our attention to the Court of Appeals' opinion in *Fleming v. Town of Silver City*, 1999-NMCA-149, ¶ 6, 128 N.M. 295, 992 P.2d 308, which states in dicta that

> a municipal water system does not fall within the purview of the PUA except that the regulation of the PUA extends to prohibit a municipality from operating within the service area of a regulated public utility until the municipality exercises its option to subject itself to regulation under the PUA so that both it and the existing utility may be regulated to avoid unreasonable and unnecessary duplication of plant and resources.

The Court cites Section 62-3-2.1(C) in support of this statement of the law. However, the PUA is clear and unambiguous to the extent that it excludes municipalities from being subject to its provisions. Section 62-3-3(E). Because the plain meaning of the statute is clear, we cannot engage in further interpretation. As we explained previously, Section 62-3-2.1 is a statement of policy. The operative language is found in Section 62-9-1.1, and it does not apply to Las Cruces. When and if the Legislature chooses to bring smaller municipalities into the scope of Section 62-9-1.1, it will amend the statute to do so.

{15}    In short, Moongate's CCN grants it exclusive service rights only against utilities that are subject to the PRC's authority. Nothing in the PUA suggests that issuing a CCN should allow the PRC to restrict the actions of a municipal utility that would otherwise fall outside of its jurisdiction. We conclude that the PRC's authority extends only as far as its ability to regulate, and because it has no ability to regulate Las Cruces, a CCN issued by the PRC has no limiting effect on the city. *See S. Union Gas Co. v. N.M. Pub. Util. Comm'n*, 1997-NMSC-056, ¶ 7, 124 N.M. 176, 947 P.2d 133 ("[T]he [PRC] cannot legitimately exercise jurisdiction over [a party] unless [that party] properly falls within the [PRC]'s statutorily defined jurisdiction."). The Court of Appeals' dicta in *Fleming* is incorrect insofar as it suggests otherwise. Moongate's CCN does not prevent a municipality with a population of less than 200,000 from competing with Moongate in its certificated area. We therefore affirm the Court of Appeals to the extent that it concluded that "Moongate's CCN did not grant [it] exclusive service rights against [Las Cruces'] water utility." *Moongate*, 2012-NMCA-003, ¶ 24.

6

**B.    LOSS OF AN ABSTRACT RIGHT TO SERVE IS NOT A COMPENSABLE TAKING**

**{16}**    We now address Moongate's regulatory taking claim. Even though Moongate's CCN does not prevent Las Cruces from providing service in the certificated area, this does not necessarily preclude the possibility that Las Cruces effectuated a taking in doing so. The district court granted summary judgment in favor of Moongate on the basis that its CCN gave it exclusive service rights as against Las Cruces. We disagree with the district court's conclusion and hold that a taking can occur, even in the absence of a public utility's exclusive right to furnish water under a CCN, if the CCN holder can prove that it had established infrastructure and was already serving customers in the area interfered with by the municipality.

**{17}**    Article II, Section 20 of the New Mexico Constitution and the Fifth Amendment to the United States Constitution forbid the taking of private property for public use without just compensation. *See, e.g.*, *Bd. of Educ. v. Thunder Mountain Water Co.*, 2007-NMSC-031, ¶ 8, 141 N.M. 824, 161 P.3d 869 (explaining the takings protections set forth in the federal and state constitutions); *State ex rel. State Highway Comm'n v. Chavez*, 77 N.M. 104, 106, 419 P.2d 759, 760 (1966) (explaining that the right of access is a property right that cannot be taken or damaged without just compensation). In evaluating takings claims under the New Mexico Constitution, "we turn to [both] federal [and state] cases for guidance, since '[o]ur state Constitution provides similar protection' to the Takings Clause in Amendment V of the United States Constitution." *Primetime Hospitality, Inc. v. City of Albuquerque*, 2009-NMSC-011, ¶ 19 n.1, 146 N.M. 1, 206 P.3d 112 (quoting *Thunder Mountain*, 2007-NMSC-031, ¶ 8 (third alteration in original)).

**{18}**    A regulatory taking, which Moongate asserts occurred here, occurs when the government regulates the use of land, but does not condemn it, i.e., take title to the property. *Manning v. Mining & Minerals Div.*, 2006-NMSC-027, ¶ 22, 140 N.M. 528, 144 P.3d 87. "The general rule is that a regulation which imposes a reasonable restriction on the use of private property will not constitute a 'taking' of that property if the regulation is (1) reasonably related to a proper purpose and (2) does not unreasonably deprive the property owner of all, or substantially all, of the beneficial use of his [or her] property." *Temple Baptist Church, Inc. v. City of Albuquerque*, 98 N.M. 138, 144-45, 646 P.2d 565, 571-72 (1982). If a regulatory taking has occurred, an action lies for inverse condemnation. *See Townsend v. State ex rel. State Highway Dep't*, 117 N.M. 302, 304, 871 P.2d 958, 960 (1994) (action in inverse condemnation is the exclusive remedy when property is taken or damaged for public use by a governmental entity that has failed to pay just compensation or initiate condemnation proceedings).

**{19}**    Municipalities have "the authority to condemn privately operated water . . . facilities for public use." *United Water N.M., Inc. v. N.M. Pub. Util. Comm'n*, 1996-NMSC-007, ¶ 23, 121 N.M. 272, 910 P.2d 906; Section 3-27-2(A), (G). We have required condemning authorities to pay just compensation to public utilities when taking tangible property, such

7

as a water line extension and associated property. *Thunder Mountain*, 2007-NMSC-031, ¶¶ 3, 5. In this case, Moongate frames its takings claim as whether Las Cruces "could take Moongate's exclusive service rights" without just compensation. At oral argument, we asked Moongate's counsel what property was being taken that required compensation. Moongate reiterated that the property requiring just compensation was its exclusive right to serve. Essentially, Moongate asks us to require compensation for the fair market value of the lost potential opportunity to serve.

**{20}** The district court found that in at least some of the certified area, "[a]t most, Moongate lost only a few potential residential water customers as a result of the City's annexation . . . and agreement to provide water . . . utility service." Additionally, the district court found that "Moongate had no infrastructure on any of the three tracts of land and no customers on any of the properties," and it "had no ownership interest in any of the land[]." The district court also found that "Moongate had no physical assets in the areas in issue, and that no physical asset of any kind was taken by the City from Moongate." Further, the district court found that "[i]t was undisputed that, absent significant infrastructure improvements, Moongate could not serve . . . the Dos Suenos subdivision," and the developer had requested that Las Cruces provide utility services to the area. The district court also found that "Moongate has not incurred, and will not incur, any costs to serve the subject subdivisions." Essentially, the district court found that any lost profits were speculative because they were based on a hypothetical future income stream.

**{21}** Since there can be no taking of exclusive service rights if the rights are not exclusive as to the party that has allegedly taken them, and the district court's findings of fact indicate that Moongate had no tangible assets on the certified area, the City has not engaged in a taking. If Moongate had proved that it had invested in production capacity to serve the area, built a plant or other infrastructure, and Las Cruces then took over service or began competing in the certified area, this would be an entirely different issue, which might justify compensation under a stranded assets theory. Indeed, at oral argument, counsel for Las Cruces conceded that there would have been a taking if that had been the situation.

**{22}** We have defined stranded assets or stranded costs "as those costs that . . . utilities currently are permitted to recover through their rates but whose recovery may be impeded or prevented by the advent of competition in the industry." *State ex rel. Sandel v. N.M. Pub. Util. Comm'n*, 1999-NMSC-019, ¶ 7, 127 N.M. 272, 980 P.2d 55 (internal quotation marks and citation omitted); *see also City of Corpus Christi v. Pub. Util. Comm'n of Tex.*, 51 S.W.3d 231, 238 (Tex. 2001) ("[S]tranded costs are investments in or the cost of tangible assets" that it is in the public interest for utilities to recover). For example, if Moongate had proven that Las Cruces' actions rendered tangible assets worthless, Moongate could have legitimately argued that its investment in those assets was compromised, and therefore it was entitled to compensation under a stranded assets theory. However, Moongate did not make that argument, and the district court's findings of fact and conclusions of law make it clear that Moongate failed to demonstrate any loss at all. Significantly, Moongate itself identifies the alleged "exclusive service rights" as the property that requires just compensation—it

8

does not point to any tangible asset that has been affected by Las Cruces' actions. Therefore, we cannot conclude that Las Cruces has engaged in a taking, and we hold that in the absence of any proof of tangible loss—i.e., physical taking or stranded costs—a public utility is not entitled to just compensation when a municipality lawfully exercises its right to serve in the public utility's certificated area.

{23}    Moongate cites case law from other jurisdictions to support the proposition that a municipality that invades a public utility's certificated area has taken property which requires just compensation. Although the authorities relied upon by Moongate are distinguishable, the reasoning and analyses in these cases were useful to this Court in reaching its conclusion. For example, in *City of Jackson v. Creston Hills, Inc.*, 172 So. 2d 215, 217-18, 220 (Miss. 1965), the court held that the city of Jackson had engaged in a taking when it invaded certificated territory where a public utility had established infrastructure ("two deep wells, two submersible pumps, two pressure tanks, water mains, service lines and other sundry property"), *id.* at 217-18, and was already providing service to customers in the area. Notably, the court found error in the district court's decision to value the CCN separately for calculation of damages. *Id.* at 221-22. Another example is *Delmarva Power & Light Co. v. City of Seaford*, 575 A.2d 1089, 1102-03 (Del. 1990), in which the Supreme Court of Delaware held that the city of Seaford could not take customer accounts from a public utility unless just compensation was paid. The municipality began to provide service to two commercial customers which the public utility had served up to that point. *Id.* at 1091. Like *City of Jackson*, *Delmarva* supports the proposition that a municipality engages in a taking when actual (rather than potential) customers or infrastructure is involved. *See Delmarva*, 575 A.2d at 1103; *City of Jackson*, 172 So. 2d at 218. These cases, however, do not support that a taking has occurred when a right to serve has been compromised and no infrastructure or customers were involved.

**CONCLUSION**

{24}    The district court erred in granting summary judgment in favor of Moongate. Therefore, we affirm the Court of Appeals to the extent that it determined that Moongate's CCN does not guarantee exclusive service rights against Las Cruces. We also conclude that the loss of an abstract right to serve, without tangible loss, is not compensable as a taking. We remand to the district court to enter judgment for Las Cruces.

{25}    **IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

9

_____

 RICHARD C. BOSSON, Justice


_____

 CHARLES W. DANIELS, Justice


_____

BARBARA J. VIGIL, Justice

**Topic Index for _Moongate Water Co., Inc. v. City of Las Cruces_, No. 33,182**

**APPEAL AND ERROR**
Standard of Review

**CONSTITUTIONAL LAW**
Taking Without Compensation

**GOVERNMENT**
Municipalities
Regulatory Authority
Water and Waste Systems

**PUBLIC UTILITIES AND COMMUNICATIONS**
Public Utilities, General

**STATUTES**
Interpretation
Legislative Intent