This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36959**

**ANGELA MEDROW, individually, and
on behalf of others similarly situated,**

     Plaintiff-Appellant,

v.

**NEW MEXICO PUBLIC EDUCATION
DEPARTMENT,**

     Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Francis J. Mathew, District Judge**

Warren F. Frost, P.C.
Warren F. Frost
Logan, NM

for Appellant

SaucedoChavez, P.C.
Christopher T. Saucedo
Daniel C. Apodaca
Albuquerque, NM

Montgomery & Andrews, P.A.
Jeffrey J. Wechsler
Randi N. Valverde
Santa Fe, NM

for Appellee

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}**     Angela Medrow appeals the district court order granting defendant Public Education Department's (PED) motion for summary judgment. We are called on to decide whether the PED regulation that makes attendance, measured in part by use of accrued leave, a factor in Medrow's annual teacher evaluation violated Article II, Section 20 of the New Mexico Constitution, which prohibits taking or damaging private property for public use without just compensation. Because Medrow has not demonstrated that the application of the PED regulation to her has, at this juncture, effected a taking of property without just compensation, we affirm.

**BACKGROUND**

**{2}**     Medrow, a teacher with the Logan Municipal Schools, filed a complaint against PED in 2017 to challenge the statewide teacher evaluation system that PED established by regulation in 2012.[1] The system provides guidance to school districts for annually measuring individual teachers' effectiveness. *See generally* 6.69.8 NMAC. One of its requirements is that the district's evaluation of its teachers include an attendance component, *see* 6.69.8.8(H) NMAC; this facet of the evaluation was the object of Medrow's complaint.

**{3}**     Medrow sought injunctive and declaratory relief. Regarding the latter, she requested that the "use of contractually earned leave as a basis for subtracting points from a teacher's annual evaluation" be deemed a violation of Article II, Section 20—the takings clause—of the New Mexico Constitution. Medrow did not present any other legal theories in support of her challenge to the evaluation system.

**{4}**     According to Medrow, for the 2016-2017 school year, the one in which she filed her complaint, 20 of 200 possible points of her evaluation were based on attendance.[2] One point out of those twenty was deducted for each day of leave she took, but beginning only after she missed six days.[3] Medrow's leave allowances were calculated in accordance with the school district's policy and were provided for through her employment contract. In the 2016-2017 school year, she used eight and one-half days of leave. When combined with points corresponding to the other effectiveness measures, Medrow would be rated exemplary if she scored 173 or higher; highly effective if she scored between 146 and 172; effective if she scored between 119 and 145; minimally effective if she scored between 92 and 118; and ineffective if she scored below 92. Were she rated minimally effective or ineffective, Medrow claims, she would be subject to placement on a growth plan to correct her unsatisfactory work

---

[1] The 2012 regulation was repealed and replaced on August 15, 2017, but the attendance provision Medrow challenged remained intact. *See* 6.69.8.8(H) NMAC.

[2] The PED regulation states that five percent of a teacher's evaluation must be based on attendance and five percent on student and parent perception surveys. *See* 6.69.8.8(H) NMAC. Medrow explains that, in her case, since her students were too young to complete surveys, the survey component was not included, and instead ten percent was based on attendance.

[3] Not all types of leave count toward the total. Excluded from the attendance calculation is leave taken pursuant to the Family Medical Leave Act, as well as leave for bereavement, jury duty, military service, religious purposes, professional development, and coaching and other school-related activities.

performance; she further claims that if her work performance was not thereafter corrected, she could be terminated. In each of the school years before 2016-2017, Medrow was rated ineffective, minimally effective, and effective, respectively. However, the district court determined that Medrow had not shown that she would suffer adverse consequences as a result of taking leave in the 2016-2017 school year or that the PED regulation prevented her from taking leave.

**{5}** PED moved to dismiss Medrow's complaint, arguing that the facts as alleged were legally insufficient to effect a taking. The motion was later converted to one for summary judgment. The district court denied her request for an injunction and granted summary judgment. Medrow does not appeal the injunction denial; she challenges only the summary judgment. The district court resolved that matter by concluding that (1) a teacher's contractually accrued leave constitutes a property interest; but (2) PED's actions did not constitute a taking under the takings clause of the New Mexico Constitution.

## DISCUSSION

**{6}** We must begin by emphasizing the scope of this case. Although Medrow framed her complaint as a class action seeking relief on behalf of all teachers in New Mexico, the district court did not certify her case as a class action. Because the district court adjudicated only Medrow's challenge to her own evaluation, our analysis is limited to her claim. We do not address the claims of any other teachers.

**{7}** "We review an order granting summary judgment de novo." *Santa Fe Pac. Tr., Inc. v. City of Albuquerque*, 2014-NMCA-093, ¶ 16, 335 P.3d 232. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks and citation omitted). Here, the material facts are not in dispute, so the salient question is a legal one: whether the facts Medrow alleged gave rise to an unconstitutional taking. *See id.*

**{8}** An unconstitutional taking under the New Mexico Constitution arises from a violation of Article II, Section 20, which states: "Private property shall not be taken or damaged for public use without just compensation." Aside from the "or damaged" phrase in our takings clause, this language approximates that of the federal takings clause. *See New Mexicans for Free Enter. v. City of Santa Fe*, 2006-NMCA-007, ¶ 52, 138 N.M. 785, 126 P.3d 1149; *compare* U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."), *with* N.M. Const. art. II, § 20. Despite that difference, "our jurisprudence in this area does not materially vary from federal jurisprudence." *New Mexicans*, 2006-NMCA-007, ¶ 52; *see generally* Maureen E. Brady, *The Damagings Clauses*, 104 Va. L. Rev. 341, 395 (2018) (observing that "the damagings clauses [in state constitutions] are construed narrowly"; that "[o]nly physical disturbances of certain valuable property rights can create constitutional liabilities"; and that, given the evolution of interpretation in federal takings law, "the clauses typically mandate compensation in circumstances where the federal Takings Clause would already apply"). Accordingly, "[i]n evaluating takings claims under

the New Mexico Constitution, we turn to both federal and state cases for guidance[.]" *Moongate Water Co., Inc. v. City of Las Cruces*, 2013-NMSC-018, ¶ 17, 302 P.3d 405 (alterations, internal quotation marks, and citation omitted).

**{9}** Since here there has been no physical taking of private property, we understand Medrow to argue that she suffered a regulatory taking. *See, e.g.*, *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 522 (1992) (identifying the two general classes of takings cases: one where "the government authorizes a physical occupation of property (or actually takes title)"; and the other where "the government merely regulates the use of property").

> The general rule is that a regulation which imposes a reasonable restriction on the use of private property will not constitute a 'taking' of that property if the regulation is (1) reasonably related to a proper purpose and (2) does not unreasonably deprive the property owner of all, or substantially all, of the beneficial use of his or her property.

*Moongate*, 2013-NMSC-018, ¶ 18 (alteration omitted) (quoting *Temple Baptist Church, Inc. v. City of Albuquerque*, 1982-NMSC-055, ¶ 27, 98 N.M. 138, 646 P.2d 565).

**{10}** Medrow and PED disagree about whether the facts of this case meet several of the New Mexico takings clause's requisites. Namely, PED challenges whether Medrow's property has been "taken"; whether it has been "damaged"; and, presuming one of those conditions is met, whether it was put to "public use."

**{11}** On the other hand, the parties appear to agree that Medrow's contractually accrued leave falls under the umbrella of "property" as that term is used in the takings clause. As we see it, it is Medrow's *right to use* that leave that represents the property at issue. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003 (1984) (observing that the term "property" in the federal takings clause has been construed "to denote the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it" (internal quotation marks and citation omitted)). Thus, for purposes of our analysis, we refer to Medrow's right to use her contractually accrued leave when speaking of the property at issue, and we furthermore assume without deciding that that right is "property" in the takings sense. *See, e.g.*, *Corn v. City of Lauderdale Lakes*, 95 F.3d 1066, 1075 (11th Cir. 1996) (recognizing that "while certain property interests may not be taken without due process, they may be taken without paying just compensation").

**{12}** But even giving Medrow the benefit of any doubt as to whether her right to use her contractually accrued leave qualifies as property for purposes of our takings clause analysis, we are not persuaded that, under the facts of this case, there was a taking of that right. Primarily, this is because Medrow has failed to allege that any specific property was taken or damaged; in other words, she failed to establish that the teacher evaluation system extinguished or restricted her right to use her accrued leave.

**{13}** Medrow's first argument to the contrary is that PED benefitted from improved teacher attendance by "depriving each and every New Mexico teacher of their contractually earned sick leave without compensation." This exaggerates the scope of the issue before us, which is only whether the application of this regulation to Medrow violates the takings clause, not whether its application to any other teacher does so. Medrow also exaggerates the regulation's reach: she put forth no evidence that the evaluation system directly dispossessed her of her right to use her leave. And she does not challenge the district court's finding that she used eight and one-half leave days in the 2016-2017 school year.

**{14}** Medrow's second argument is that the system works an indirect dispossession by disincentivizing and punishing the taking of leave, and that the system deprives her of beneficial use of that leave by threatening her teaching position should she take that leave. Whatever merit this theory might have in the abstract, it is not viable on the record before us. Medrow makes no claim that the evaluation system prevented or deterred her from taking more leave, and there is no evidence that any employment action was taken against her as a consequence of her evaluation results. Moreover, the causal connection between leave taking and job loss that Medrow asks us to draw entails speculation. Even if Medrow had lost the maximum twenty points on her evaluation for her absences, she could still have received a rating of exemplary (a score of at least 173 points out of 200) or another rating high enough to insulate her from all negative evaluation-related consequences. And even a rating that exposed her to the possibility of such consequences would not automatically produce them because, as the district court found, each school district retains the discretion to determine whether to discipline a teacher for excessive absences. Given all this, we see no avenue for recognizing that the PED regulation, as it applied to Medrow, effected a taking.

**{15}** The only case Medrow cites as justifying a different conclusion is *Allen v. McClellan*, 1965-NMSC-094, 75 N.M. 400, 405 P.2d 405. There, our Supreme Court held that the "consequential damage to the owner of private land" was a taking under Article II, Section 20, "even though there was no actual taking of any part of the land itself." *Allen*, 1965-NMSC-094, ¶ 10. The damage referred to occurred after the New Mexico Game Commission ordered the creation of a game refuge or management area and then forbade hunting within the area. *See id.* ¶ 2. The damage was suffered by the owners of private land within the refuge; those owners, the plaintiffs, were arrested for violating the prohibition by hunting on their land. *See id.* The court reasoned that the right to pursue game on one's land was a fundamental attribute of land ownership, that the commission's orders had stripped the plaintiffs of that right, and that such a deprivation amounted to an unconstitutional taking. *See id.* ¶¶ 8-10.

**{16}** Medrow argues that her situation is indistinguishable from the *Allen* landowners'. Referring to one landowner, Medrow says that "[h]e still had ownership of his property[,] . . . but if he hunted on it, he was subject to being criminally charged[.]" She analogizes, saying that "teachers retain their leave on the books, but if they use that leave they are subjecting themselves to negative employment consequences including possibly termination."

**{17}**    But this analogy is flawed. The ownership interest at stake in *Allen* was not the plaintiff's land, but rather his right to hunt on it. The commission prohibited him from exercising that right. For Medrow's situation to correspond to the *Allen* landowners', the PED regulation would have to have prohibited Medrow from exercising her right to use her accrued leave—and this, as we have said, it did not do.

**{18}**    We see this case as more akin to *New Mexicans* than *Allen*. In *New Mexicans*, the plaintiffs, a group that included business owners, challenged a municipal ordinance setting the minimum wage higher than under federal or state law. 2006-NMCA-007, ¶ 1. They argued in part that the ordinance would "economically destroy[]" their ventures, thereby effecting a taking. *Id.* ¶ 52. This Court applied the *Temple Baptist* rule, reiterated in *Moongate*, governing when "a reasonable restriction on the use of private property will not constitute a 'taking' of that property[.]" *New Mexicans*, 2006-NMCA-007, ¶ 53 (internal quotation marks and citation omitted). Before ultimately concluding that the wage regulation did not violate either the federal or state takings clause, we observed that the regulation did not appear to fit within the *Temple Baptist* rule. *See New Mexicans*, 2006-NMCA-007, ¶ 53. Specifically, there was no restriction on the use of private property because the wage regulation did not prevent the business owners from using their businesses as they wished. *Id.* Likewise here—and unlike in *Allen*—the regulation at issue does not appear to have restricted Medrow's use of private property in a manner that rises to the level of a taking.

**{19}**    Consequently, we hold that the PED regulation as it applied to Medrow did not effect a taking and that the district court therefore did not err in granting summary judgment against her. We stress that our holding is narrow; it is limited to the specific legal theory and factual record before us. We offer no opinion on whether application of the PED regulation (in its prior or current form or some revised one) to Medrow or any other teacher would effect a taking under different circumstances. *See Bd. of Cty. Comm'rs of Lincoln Cty. v. Harris*, 1961-NMSC-165, ¶ 12, 69 N.M. 315, 366 P.2d 710 (recognizing that "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking"; that this is "a question of degree"; and that "a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change" (quoting *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415-16 (1922))). Nor do we opine about whether the PED regulation is vulnerable to any other legal challenge.

**CONCLUSION**

**{20}**    We affirm.

**{21}    IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**MEGAN P. DUFFY, Judge**